209 N.J. Super. 608 (1986)
508 A.2d 1156
EDWARD F. FORSYTHE AND LINDA FORSYTHE, PLAINTIFFS,
v.
TELEDYNE TURNER TUBE, ET AL., DEFENDANTS, AND TELEDYNE TURNER TUBE, DEFENDANT-THIRD PARTY PLAINTIFF APPELLANT,
v.
NEW JERSEY MANUFACTURERS INSURANCE CO., THIRD PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 14, 1986.
Decided May 2, 1986.
*609 Before Judges FURMAN, PETRELLA and SKILLMAN.
Thomas M. Mulcahy argued the cause for appellant (Purcell, Ries, Shannon & Mulcahy, attorneys).
Richard D. Catenacci argued the cause for respondent (Connell, Foley & Geiser, attorneys; Richard D. Cantenacci of counsel; Patricia J. Pindar on the brief).
No other briefs were filed on behalf of any other party.
The opinion of the court was delivered by PETRELLA, J.A.D.
This is essentially another dispute between two insurance carriers over which should bear responsibility for defense and coverage regarding an accident which occurred while a truck was attempting to make a delivery at the loading dock of the receiving company. The trial judge concluded in ruling on the cross-motions for summary judgment that Hartford Insurance *610 Company (Hartford), which provided insurance for the involved premises, was responsible for coverage rather than New Jersey Manufacturers Insurance Co. (Manufacturers), which insured the truck and its driver who was injured while attempting to use what was apparently a defective loading dock plate. We affirm.
The present state of the legal precedent in this area is somewhat conflicting. More recent cases have distinguished Streeter v. Henry Heide, Inc., 171 N.J. Super. 58 (App.Div. 1979). We thus consider the facts involved in the underlying case in light of Streeter and the other case authorities in this State to determine the present viability of Streeter as precedent.
The underlying law suit brought by plaintiff, Edward F. Forsythe, the truck driver, and his spouse, Linda Forsythe (who asserted a per quod claim), was settled without prejudice to the resolution of the dispute between the two insurance carriers, Hartford and Manufacturers. The sole issue on this appeal is whether Hartford as comprehensive general liability carrier for defendant-third party plaintiff Teledyne Turner Tube (Teledyne) or Manufacturers, as insurer for the vehicle making or attempting to make the delivery on Teledyne's property when the accident occurred, is responsible for coverage for the accident.
Forsythe had backed his truck into a loading bay of Teledyne's building. According to plaintiff's deposition, it was his practice when making deliveries at Teledyne to obtain assistance from an employee of Teledyne in unloading boxes from his truck. The loading dock was equipped with a movable loading dock plate that adjusted to the height of the floor of the truck. After Forsythe dropped off delivery papers at the desk in the warehouse, he went to Teledyne's loading dock in order to unload boxes from his truck. To do this Forsythe had to raise the rear door and manually adjust the loading dock plate so that it became even with the floor bed of the truck. Forsythe raised the docking plate with the help of James Runyon, a *611 Teledyne employee, who was to hold the plate as a safety precaution. The process of adjusting the docking plate and opening the rear truck door was standard procedure. Forsythe indicated that the docking plate was supposed to stay level with the floor of the truck, but that "it never did as long as I can remember. It went down below the floor level. It had to have a stick under it to hold it up to the floor level." Forsythe also indicated that nothing unusual occurred in the unloading process until the docking plate collapsed on him.
The accident happened immediately after Forsythe and Runyon had raised the docking plate. Forsythe released his hand from the plate and took one step with the intention of raising his rear door in order to place the docking plate upon the rear floor bed of the truck. In its cross-motion for summary judgment, Teledyne (by its insurer, Hartford) had attached and relied on extracts of Forsythe's depositions. According to Forsythe, the weight balance mechanism of the loading docking plate broke at that point causing the docking plate to fall upon him. Forsythe testified that he was aware that the docking plate was to facilitate the loading and unloading of the truck and that in the normal course of the loading operation he first had to raise the docking plate in order to raise the truck's door, and lower the docking plate onto the truck bed.
Plaintiff's complaint alleged[1] that his injuries were proximately caused by Teledyne's negligence in failing to:
[I]nspect and remedy hazardous and potentially dangerous conditions at its plant facility which it was obligated to do in the exercise of ordinary care for business invitees and licensees entering upon the premises, to inspect and remedy a dangerous condition on its property of which it had prior knowledge, improperly maintaining or failing to maintain the loading, unloading dock and the scale area, by failing to warn business invitees or licensees by appropriate notice of the hazardous and dangerous condition, and in otherwise neglecting repair, maintenance and allowing improper use and abuse of the loading, unloading dock and the scale area on which plaintiff was injured.
*612 In deciding the cross-motions for summary judgment in favor of Manufacturers, the trial judge said:
[T]he facts do not develop that the plaintiff did anything wrong in the course of utilizing the property of Teledyne; that the truck was in any way involved in doing anything other than just being there; and that the negligence which may have given rise to the injury which was ultimately sustained by the plaintiff was caused by anything that occurred during the unloading process, other than the condition of the property. The condition of the building, the condition of the loading dock.
Hartford, as insurer of Teledyne, relies heavily upon Streeter v. Henry Heide, supra, in arguing that the use of the docking plate was an integral part of the loading and unloading process and, therefore, Manufacturers' policy insuring the vehicle also extended coverage to Teledyne as an additional insured under the loading and unloading provisions of that policy. Hartford takes the position that because Forsythe was injured while attempting to use Teledyne's loading dock plate in order to unload his cargo, a loading and unloading function of the truck was involved within the meaning of Manufacturer's policy. By invoking the loading and unloading provisions of the insurance policy covering the truck, the owner of the premises attempts to shift responsibility for defense of the injured truck driver's claim and any liability to the insurance company for the trucking firm.
In Streeter v. Henry Heide, Inc., supra, the plaintiff truck driver was injured "as he was preparing a loading platform to load a shipment at Henry Heide Incorporated's premises." 171 N.J. Super. at 59. The spring-loaded docking plate, which was supposed to fall into place when the truck was backed into the loading platform, stuck, and when plaintiff attempted to trip it, he was injured. Streeter sued Heide for negligence and breach of warranty that the instrument was fit for the use intended. Streeter held that the truck owner's liability insurance carrier *613 afforded coverage to the owners of the premises' for plaintiff's claims:[2]
In construing the loading and unloading provision New Jersey applies the `complete operation' doctrine. The proper approach is to consider `whether the accident was, within reason, causally connected with the complete operation of unloading * * * the truck.' Drew Chem. Corp. v. Amer. Fore Loyalty Group, etc., 90 N.J. Super. 582, 591 (App.Div. 1966). Without the lowering of the docking plate to connect the truck with the loading platform, there could be no loading of the truck. It is perfectly obvious that the placement of the docking plate was an integral part of the loading operation. [Id. at 60-61]
In rejecting the argument that because no employee of Heide was involved, it could not have been "using" the truck, Streeter also said that:
Since the installation of the docking plate was essential to the loading of the truck and the installation was provided for by Heide, Heide was in fact using the truck for loading. The acts alleged to have caused the accident were, therefore, causally connected with the complete operation of loading. Cenno v. W. Virginia Paper & Pulp Co., 109 N.J. Super. 41, 47 (App.Div. 1970), certif. den. 56 N.J. 99 (1970). [Id. at 61]
However, as we have more recently stated in Neuman v. Wakefern Foods, 205 N.J. Super. 263, 266 (App.Div. 1985):
[T]he current state of our law regarding the responsibility of the owner of the premises is as more recently stated in Wakefern Food Corp. v. Gen'l Acc. Group, supra [188 N.J. Super. 77 (App.Div. 1983)].
Our reexamination of the law satisfies us that Streeter applied certain legal principles too broadly. We decline to follow Streeter in cases such as the one involved here. Streeter relied on Cenno v. W. Virginia Paper & Pulp Co., 109 N.J. Super. 41, 47 (App.Div. 1970), certif. den. 56 N.J. 99 (1970), in which the driver of the truck involved was delivering bales of cardboard boxes which he had picked up elsewhere. The bales were about to be unloaded by an Allied employee using a fork lift. While moving the bales a metal band used to bale the cardboard boxes broke, causing plaintiff to lose his balance and *614 fall off the truck. Plaintiff in that case had sued the manufacturer of the bands and clips and also West Virginia Paper & Pulp Company which had baled the cartons, alleging that the bales had been negligently banded. Defendants sought coverage for plaintiff's claim under the truck owner's liability policy. We held in Cenno that there was no coverage, and pointed out that the alleged negligent acts "antedated delivery of the goods" to plaintiff's employer and "were unrelated to the loading or unloading of the truck." Id. at 45. We also stated:
In summary, we conclude that unless the alleged negligent act which is alleged to have caused the accident was an integral part of the overall loading or unloading operation, so that the mishap is causally connected with such loading and unloading and did not merely occur during it, the person charged with the negligent act is not considered to have been using the vehicle so as to be covered by the vehicle's liability policy for such act as an additional assured. [citation omitted; id. at 47.]
Likewise, in Atlantic Mutual Ins. Co. v. Richards, 100 N.J. Super. 180 (Chan.Div. 1968), aff'd o.b. 105 N.J. Super. 48 (App.Div. 1969) the loading and unloading provisions of the vehicle's insurance policy were held not to provide coverage to the owner of the loading platform. The driver of the truck fell into an open stairwell, after presumably tripping over "a three-foot slat of wooden dunnage, which was not used in the unloading process." Sapolin was alleged to have been negligent in failing to maintain a reasonably safe place to work. Judge Furman, then sitting in the Chancery Division, stated:
The regular inspection of the loading platform, the remedying of a hazardous condition or the communication of an adequate warning may be viewed broadly as necessary for safe unloading. But the fulfillment of such duty was not a step in the specific operation of unloading the National Lead truckload. To construe the maintenance of the loading platform as a `use of the automobile' in unloading would be to extend automobile liability coverage to negligence occurring prior to the arrival of the truck, that is, failing to remove dunnage from proximity to the open stairwell, and to a nuisance grounded in negligence, that is, the stairwell without guardrail. No New Jersey reported opinion has so held. [Id. at 183.]
In Atlantic Mutual we essentially agreed with Judge Furman's conclusion that the insurance covering the truck should not extend to negligent maintenance of the loading dock, but *615 "should be limited to negligence in loading or unloading the automotive vehicle, including preliminary and subsequent measures proximate in time related to its loading or unloading." Id. at 185.
We are satisfied that Neuman v. Wakefern Foods, supra; Wakefern Food Corp. v. General Acc. Group, 188 N.J. Super. 77 (App.Div. 1983); Cenno v. W. Virginia Paper, supra; and Atlantic Mutual Ins. Co. v. Richards, supra, properly express the appropriate test and the present state of the law. We also note that in Halifko v. Cities Service Oil Co., 510 F. Supp. 1131 (D.N.J. 1981), aff'd o.b. mem. 676 F.2d 684, 685 (3rd Cir.1982), the federal court criticized rather than distinguished Streeter, and chose instead to rely on earlier New Jersey decisions, such as Cenno, supra and Atlantic, supra, which applied a more limited interpretation of the use requirement. Id. at 1134-1137. The judge applied what he construed to be New Jersey law and concluded that the New Jersey Supreme Court would not extend coverage by the truck owner's liability insurer to Cities Service Company for negligent maintenance of the loading platform. Id. at 1133-1137.[3]
In our view, Streeter was wrongly decided. Our dissatisfaction with Streeter was perhaps evident in Wakefern Food Corp. v. General Acc. Group, supra (where the truck driver tripped over debris on the loading platform) when we said:
We are mindful of this court's decision in Streeter v. Heide Inc., 171 N.J. Super. 58 (App.Div. 1979), a case where the `complete operation doctrine' was, in a terse opinion, applied with a broad brush. We see no reason to take such an approach in this case. Streeter is distinguishable. The placement of the malfunctioning loading dock plate was `an integral part of the loading operation.' To that extent, the malfunctioning dock plate may be said to `within reason' have a causal relationship to the loading process, just as the clogged and malfunctioning pipeline involved in Drew, supra, had a causal connection to that unloading operation. The same cannot be said of the debris-strewn dock *616 area maintained by Wakefern and furnished to its invitees. The negligent accumulation of debris in a delivery area is hardly a `use' of the vehicles that come to those premises. [188 N.J. Super. at 84].
In the instant case we think that the comment in Wakefern Food (also quoted in Neuman), is relevant:
We feel constrained to observe pragmatically that declaratory judgment suits like the present one are, by large measure, solely between an automobile insurance carrier and a general liability carrier who covers the premises and operations liability of a business to whom goods are delivered or from whom goods are taken. One of the purposes for which the latter coverage is purchased is to protect the business operator from the risk of liability to his invitees resulting from the negligent maintenance of his premises. `Use' provisions and `loading and unloading' clauses are intended to protect the named insured and others who, in the pick-up or delivery process, are actually using the motor vehicle and its contents during the `complete operation.' When an accident, such as the one here presented, is occasioned by negligent maintenance of the premises and the only connection to that event is the fact that the motor vehicle and its operator are present because a delivery or pick-up is to be made, no realistic social or public policy is served by straining to shift coverage. Moreover, no reasonable contractual expectations are disappointed or denied and the `reasonable contemplation of the parties' mentioned in Drew, supra 90 N.J. Super. at 587, is hardly placed at hazard. [188 N.J. Super. at 86-87.]
We are unable to discern how negligence of the owner of premises in the inspection, maintenance and repair of its own loading dock, resulting in collapse of the docking plate upon a trucker engaged in attempting to prepare to unload, can reasonably be viewed as negligent use of the truck, triggering insurance coverage under the vehicle's policy. See Wakefern Food Corp. v. General Acc. Group, supra (188 N.J. Super. at 84). We distinguish between cases where there is negligence in the actual loading and unloading operation, such as by an employee of a warehouse in loading a truck, and those cases where the negligence is not directly related to the loading and unloading, but the accident occurs during the loading and unloading process, such as where there is a dangerous condition on the premises of the warehouse. Except for Streeter our cases are in harmony with that conceptual framework. Neuman v. Wakefern Foods, supra (205 N.J. Super. 263); Wakefern Food Corp. v. General Acc. Group, supra (188 N.J. Super. at 77); Cenno v. W. Virginia Paper & Pulp Co., supra, (109 N.J. Super. *617 at 41); Maryland Casualty Co. v. N.J. Manufacturers, 48 N.J. Super. 314 (App.Div. 1958), aff'd 28 N.J. 17 (1958). See also Halifko v. Cities Service Oil Co., supra. (510 F. Supp. at 1131). Hence, we decline to follow Streeter.
Here, the allegations of negligence that Teledyne failed to maintain its loading dock plate in proper condition or warn of its dangerous condition, is analogous to negligent maintenance of the loading dock itself and any liability for that condition would rest with Teledyne, and its insurer, Hartford. We are satisfied that the attempt to adjust the loading dock plate, although necessary to unload the truck, should not be construed to constitute a use of the vehicle.
Affirmed.
NOTES
[1] The complaint also contained products liability allegations against defendants other than Teledyne who are not implicated in this appeal.
[2] The result was that the trucking company's vehicle insurance was then affording coverage and a defense for a claim by its own employee, when that employee's direct claim against it would be barred in the usual case because of the bar of the Workers' Compensation Act. N.J.S.A. 34:15-8; Wellenheider v. Rader, 49 N.J. 1, 9 (1967); Tremonte v. Jersey Plastic Molders, Inc., 190 N.J. Super. 597, 600 (App.Div. 1983).
[3] In Halifko the plaintiff driver was injured when he slipped on an oil spot after stepping out of the truck he had parked on defendant's loading platform where it was to be filled with heating oil. Halifko sued Cities Service alleging that it had failed to maintain the premises in a reasonably safe condition.