225 N.J. Super. 416 (1988)
542 A.2d 940
STANLEY J. LESNIAKOWSKI AND CAROL LESNIAKOWSKI, PLAINTIFFS,
v.
AMERADA HESS CORPORATION, DOVER CORPORATION AND YOUNGMAN & CUFF DEFENDANTS.
AMERADA HESS CORPORATION, THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
FORUM INSURANCE COMPANY, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 1988.
Decided June 10, 1988.
*418 Before Judges PETRELLA and DREIER.
Harry S. Karpen, argued the cause for appellant Forum Insurance Company (Harry S. Karpen on the brief).
Robert F. Ball argued the cause for respondent Amerada Hess Corporation (Britt, Riehl & Spudic, attorneys; Robert F. Ball on the brief).
No other party participated or filed a brief.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
This appeal involves a dispute regarding the obligation to provide a defense and coverage for an accident which occurred while a tank trailer owned by Narrows Carriers, Inc. (Carrier) was being loaded with gasoline by its driver at Amerada Hess Corporation's (Amerada) plant. The underlying action brought by the trailer driver, Stanley J. Lesniakowski, and his wife, Carol Lesniakowski, who asserted a per quod claim, was settled without prejudice to the resolution of the insurance coverage issue raised by Amerada's third-party complaint. The issue on appeal is whether Amerada or Forum Insurance Company (Forum), insurer of Carrier (the operator of the trailer), is responsible for providing a defense to Amerada as an "insured" and coverage of plaintiffs' damages. The trial judge determined on cross-motions for summary judgment that Forum was responsible for coverage for the accident because plaintiff Lesniakowski was an additional insured under the "loading and unloading" provision of its liability policy.
Lesniakowski was loading a tank trailer with gasoline at Amerada's plant in Port Reading when he fell off the top of the trailer's tank and was injured. In order to load a tank trailer with gasoline, it must be driven into a loading bay over which hangs a loading rack. The loading rack consists of three meters and spillers. Each spiller, which is best described as an arm, provides different types of gasoline. Once Lesniakowski *419 positioned his truck under the appropriate spiller, he climbed on top of the truck by using a metal ladder attached to the rear of the truck and leading to a 15 inch wide catwalk along the top length of the trailer's tank. The driver positions the spiller by using an air control valve attached to the spiller that enables the spiller to be maneuvered either up or down.
The loader must unhook a chain that holds the spiller and then position the spiller over one of the four compartments in the trailer's tank that is being filled. Ordinarily the spillers are supported by pneumatic pressure and the hook and chain are used as safeguards to prevent the spiller from falling into the path of a truck in the event of pneumatic failure. The chain is attached to a building support beam and holds the spiller up so trailers can enter the loading bay. Once the hook is removed from the spiller it is usually placed in a small cylinder although it may be allowed to hang down. The number of gallons of gasoline to be pumped into the compartment is preset by the meter. Once the spiller is locked in place in the compartment dome the loader pushes a button and the tank is automatically loaded to the amount of preset gallonage. When the compartment is filled, the spiller is raised from the dome and the safety hook is reconnected.
According to the deposition of Amerada's Vice President of Terminals, if another compartment in the tank must be filled, the loader should reposition his trailer under the appropriate spiller. He testified, however, that it is possible to fill an additional compartment without moving the truck by pulling the spiller from side to side. He did not know if the drivers were instructed about use of the safety hooks and chains on the spillers. A sign entitled "Vapor Recovery Systems Loading Instructions" which is in the area of the spiller does not include any instruction for positioning the tank trailer before loading and does not refer to use of the safety hook and chain.
Lesniakowski had driven his tank trailer into the loading bay in order to load unleaded gasoline in compartments numbered *420 two and four. He proceeded to load compartment number four which was located exactly under the unleaded spiller. The unleaded spiller was at one end of the row of three spillers. The middle spiller pumped premium unleaded gasoline and the third spiller pumped regular leaded gasoline.
After he had loaded the fourth compartment, Lesniakowski attempted to load the second compartment without moving the trailer, but by moving the premium spiller out of the way and pulling the unleaded spiller over to the dome of the second compartment. In order to pull the unleaded spiller to the second compartment, Lesniakowski had to first unhook the chain holding the middle spiller (for premium gas) which was located between the unleaded spiller over the fourth compartment and the second compartment. He put the hook and chain from the middle spiller in its cylinder. Although he did not see the hook slip out of the cylinder, Lesniakowski claimed that it slipped out. As he pulled the spiller from compartment four to compartment two, the hook from the middle spiller caught the unleaded spiller which he was pulling. When the hook caught the spiller, Lesniakowski lost his balance and fell off the truck because the spiller would no longer move when he pulled it.
According to plaintiff's deposition, Amerada never instructed the drivers about use of the hooks and chains on the spillers. Lesniakowski stated that the original hooks broke because they were not durable enough to bear the weight of the spiller. He testified that these smaller hooks were replaced by larger hooks as they broke. These larger hooks did not fit into the cylinders because the cylinders were designed for the smaller hooks.
Plaintiff's complaint alleged[1] that his injuries were caused because Amerada "failed to provide a safe place for the plaintiff *421 to work, in that the rig [spiller] was makeshift, dangerous and unsafe."
Amerada's third-party complaint and amended third-party complaint sought recovery against Carrier based on the assertion that Forum's policy afforded a defense and required it to indemnify Amerada in the circumstances involved in the allegations of the complaint. The third-party complaint as well as an amended third-party complaint asserted that:
Under the provisions of such policy ... and the policy interpretation of the Courts of the State of New Jersey, an accident occurring during the loading of a truck on premises of a third-party such as Amerada Hess Corporation requires that such insurance company afford a defense to indemnify Amerada Hess Corporation in the circumstances herein for any judgment that may be obtained against it.
On this appeal Forum argues that its liability policy insuring the trailer does not provide coverage. It contends that Amerada conceded its negligence as alleged in plaintiff's complaint when it settled with plaintiff by entry of a judgment. Forum thus argues that plaintiff's injuries were not caused by a "use" of the trailer. Alternatively, Forum argues that its policy does not apply to Amerada because it is not an assured who suffered either personal injury or property damage.
We reject Forum's argument that the settlement "consent judgment"[2] should be considered an admission of liability. The judgment merely memorialized the settlement in a more *422 formal manner. The parties to this appeal agreed to litigate the coverage issue thereafter, and the issue was thus preserved despite the settlement. See Vassallo v. Bell, 221 N.J. Super. 347, 355-356 (App.Div. 1987). Unlike Stier v. Shop-Rite of Manalapan, 201 N.J. Super. 142, 149 (App.Div. 1985), the judgment neither admitted nor determined liability. Nor was there a fact-finding which could serve as the basis of collateral estoppel. See George M. Brewster & Son v. Catalytic Const. Co., 17 N.J. 20, 34-35 (1954). But see Public Service Elec. & Gas Co. v. Waldroup, 38 N.J. Super. 419, 426 (App.Div. 1955). Indeed, a factual determination of negligence or the cause of plaintiff's injury would have made clear whether Forum's policy applied under the test set forth in Forsythe v. Teledyne Turner Tube, 209 N.J. Super. 608, 616 (App.Div. 1986).
Amerada argues that there is no factual[3] support for Forum's allegation (and impliedly plaintiffs' claim) that the hook and chain assembly was negligently maintained. Amerada also argues that Forum's liability policy, which provides coverage for additional insureds during the loading and unloading process, applies because plaintiff's accident occurred as the direct result of his own negligence in pulling the spiller during what it asserts is an integral part of the loading process. However, because of the applicability to plaintiff of workers' compensation and the policy exclusion relative thereto, it is clear the policy did not provide coverage to plaintiff, and he never so asserted.
The applicable automobile policy coverage provision of Forum's policy defines the persons insured in the following fashion:

*423 Each of the following is an insured under this insurance to the extent set forth below:
(a) The named insured;
* * * * * * * *
(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
(1) a lessee or borrower of the automobile or
(2) an employee of the named insured or of such lessee or borrower;
(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above. [Emphasis supplied.][4]
The liability provisions of Forum's policy insuring Carrier provide in part:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
C. bodily injury or
D. property damage
to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading of any automobile,

* * * * * * * *
Exclusions
This insurance does not apply:
* * * * * * * *

*424 (a) to liability assumed by the insured under any contract or agreement;
(b) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits, or under any similar law,

(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; .... [Emphasis supplied].
The trial judge granted summary judgment against Forum and in favor of Amerada based on his conclusion that the quoted loading and unloading provisions of the policy applied.
The exclusionary language of the policy would appear not only to bar Lesniakowski's claim against his employer, but also against Amerada, insofar as it sought indemnification, because of the potential of indirectly having his employer's insurer, Forum, pay for his damages. In Maryland Casualty Co. v. N.J. Mfrs. Cas. Ins. Co., 48 N.J. Super. 314 (App.Div. 1958), aff'd 28 N.J. 17 (1958), however, our Supreme Court held that in such a situation the plaintiff-employee is not seeking recovery from his employer because he has brought his action against a third party who is considered an additional insured under the omnibus provision of the policy. 48 N.J. Super. at 324.[5] Thus, if an employee of Amerada or some individual (other than a co-employee of plaintiff) had been sued for negligence by plaintiff *425 then Maryland Casualty would apply because Amerada would be considered an additional insured. We are obligated to apply that case even if we disagreed with its result which creates the anomalous situation of plaintiff's employer effectively paying a tort judgment notwithstanding the bar of the workers' compensation statute.[6]Maryland Casualty may well warrant reconsideration in light of the discussion in the case law generated by the issue,[7] changes in policy provisions, and a general lack of clarity in the language of insurance policies. As to the latter, see DiOrio v. N.J. Manufacturers Ins. Co., 63 N.J. 597, 602-603 (1973). The Supreme Court was obviously aware in Maryland Casualty of the split of authority with respect to interpretation of the exclusionary provisions in policies such as the one before us. 48 N.J. Super. at 325-326.
*426 For a loading and unloading clause in a liability policy to provide coverage, an accident must, "within reason," be causally connected with the complete operation of loading and unloading, thus constituting an integral part of the loading and unloading operation, and not merely occurring during it. Cenno v. West Virginia Paper & Pulp Co., 109 N.J. Super. 41, 47 (App.Div. 1970), certif. den. 56 N.J. 99 (1970); see Neuman v. Wakefern Foods Corp., 205 N.J. Super. 263 (App.Div. 1985); Wakefern Food Corp. v. General Accident Group, 188 N.J. Super. 77, 84 (App.Div. 1983). The "integral part" rule has generated confusion in our cases. Compare Streeter v. Henry Heide Inc., 171 N.J. Super. 58, 61 (App.Div. 1979) (malfunctioning loading dock plate was considered "an integral part of the loading operation"), with Forsythe v. Teledyne Turner Tube, supra, 209 N.J. Super. at 617 (malfunctioning loading dock plate "although necessary to load truck, should not be construed to constitute a use of the vehicle"). In Forsythe we clarified the current state of our law:
We distinguish between cases where there is negligence in the actual loading and unloading operation, such as by an employee of a warehouse in loading a truck, and those cases where the negligence is not directly related to the loading and unloading, but the accident occurs during the loading and unloading process, such as where there is a dangerous condition on the premises of the warehouse. Except for Streeter our cases are in harmony with that conceptual framework. Neuman v. Wakefern Foods, supra (205 N.J. Super. 263); Wakefern Food Corp. v. General Acc. Group, supra (188 N.J. Super. at 77); Cenno v. Virginia Paper & Pulp Co., supra, (109 N.J. Super. at 41); Maryland Casualty Co. v. N.J. Manufacturers, 48 N.J. Super. 314 (App.Div. 1958), aff'd 28 N.J. 17 (1958). See also Halifko v. Cities Service Oil Co., supra, (510 F. Supp. at 1131 [D.N.J. 1981]). Hence, we decline to follow Streeter. [209 N.J. Super. at 616-617].
The trial judge's grant of summary judgment here was prior to our decision in Forsythe v. Teledyne Turner Tube, supra. He thereafter denied Forum's reconsideration motion based on Forsythe, concluding it was inapplicable. At the time summary judgment was granted and reconsideration denied, the parties had not yet settled and plaintiff was still proceeding to trial on *427 his claim against Amerada. An issue of fact existed between plaintiff and Amerada regarding liability. Amerada elected to settle that claim, which was essentially a defective premises and negligence claim. Forsythe pointed out the distinction between cases involving negligent maintenance which existed before the loading and unloading and those involving negligence by a loader or unloader. 209 N.J. Super. at 616. However, negligence was not established as chargeable to either situation here. The judge, while recognizing the distinction established in Forsythe, nonetheless erroneously applied the complete operation doctrine with a "broad brush." Wakefern Food Corp. v. General Accident Group, supra, 188 N.J. Super. at 84.
It is clear under the present circumstances that neither Carrier nor Forum, its insurer, ever became legally obligated to pay damages to Amerada on account of bodily injury to Carrier's driver. The critical inquiry here is whether Amerada was using the insured vehicle and thus became an additional insured under the omnibus provisions of the policy for "Persons Insured."[8] See Cenno v. West Virginia Paper & Pulp Co., supra, 109 N.J. Super. at 45. However, no employee of Amerada was involved in the loading operation, and no negligence claim was asserted against any Amerada employee. Forum's policy cannot be converted into a comprehensive general liability policy covering Amerada's premises merely by its assertion of an indemnification claim when it is sued for defective premises. See Halifko v. Cities Service Oil Co., 510 F. Supp. 1131, 1136-1137 (D.N.J. 1981), aff'd 676 F.2d 684 (3d Cir.1982).
*428 We do not consider that Amerada was using the vehicle involved, particularly when no agent or employee of Amerada was implicated in any way in the loading or unloading process. See Wakefern Food Corp. v. General Accident Group, supra, 188 N.J. Super. at 83-84, 87; Cenno v. West Virginia Paper & Pulp Co., supra, 109 N.J. Super. at 45-47; Atlantic Mutual Insurance Co. v. Richards, 100 N.J. Super. 180, 183 (Ch.Div. 1968), aff'd 105 N.J. Super. 48 (App.Div. 1969). Amerada did nothing to effect the loading of the tank trailer except by providing the loading facility.
Nor could we conclude by any logical interpretation of Forum's policy that Amerada was "using" the vehicle insured by Forum merely by the existence or availability of the facility. See Great Amer. Ins. Co. v. Gen. Acc. Fire & Life Assur., 321 F.2d 948, 952 (5th Cir.1963); Travelers Ins. Co. v. Buckeye Union Casualty Co., 172 Ohio St. 507, 513-515, 178 N.E.2d 792, 797 (1961); see generally Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co., 274 N.E.2d 419, 425-426 (Ind. App. Ct. 1971), rev'd on other grounds 260 Ind. 32, 291 N.E.2d 897 (1973). Forum's policy simply did not afford coverage to Amerada for this occurrence. A different situation existed in Maryland Casualty Co. v. N.J. Manufacturers & Casualty Insurance Co., supra, 48 N.J. Super. at 321, where the court relied on vicarious liability of the Port Commission by virtue of negligence of its employee who was actually engaged in loading the truck when he injured the driver.
In summary, the provisions of the automobile policy, as it relates to the policy's loading and unloading provisions, are not applicable to Amerada because it had not assumed any control over the vehicle or the loading process.
Reversed and remanded for entry of judgment in favor of Forum Insurance Company.
NOTES
[1] The complaint also alleged products liability negligence and related claims against Amerada and other defendants who participated in the installation of the spiller system. The other defendants are not implicated in this appeal.
[2] An "Order for Judgment" entered on October 14, 1987 in the amount of $56,000 states it was against Amerada Hess, presumably in favor of plaintiffs. The judgment neither states the party that judgment was entered in favor of nor contains the written consent of any party. The order also vacated an October 6, 1987 "Order of Dismissal" as to Amerada Hess Corporation only. The action brought by plaintiffs is commonly referred to as a "third-party action" because the existence of workers' compensation coverage barred suit by Lesniakowski against his employer. This is a different use of the term and is distinguished from the third-party action brought within that suit on the coverage issue between Amerada and Forum.
[3] One difficulty with the appeal is that there was no factual determination. We considered remanding for a trial on that issue, but rejected that option because the parties to the tort litigation had settled, and the "insurers" in the third-party action were essentially contesting the policy coverage provisions.
[4] There is no contention that the term "automobile" does not include the truck involved here. We need not consider whether the policy might still bar recovery under a limitation relating to loading and unloading of the vehicle which purports to exclude coverage for other than the named insured of any person not a lessee or borrower of the vehicle, or an employee of the named insured or such lessee or borrower, notwithstanding the omnibus clause. Compare Bellafronte v. General Motors Corp., 151 N.J. Super. 377, 385 (App.Div. 1977), certif. den. 75 N.J. 533 (1977), with F. & M. Schaefer Brewing Co. v. Forbes Food Div., 151 N.J. Super. 353, 361-363 (Law.Div. 1977).
[5] In Maryland Casualty, the driver of the truck owned by his employer, was injured by Cherry, an employee at South Jersey Port Commission's facility in his negligent loading with a fork lift. 48 N.J. Super. at 317-318. Kelly sued the Commission and Cherry, but could not sue his employer, if indeed a viable claim existed against his employer, because of the workers' compensation laws. Maryland Casualty, which insured the Port, but apparently not Cherry, settled with Kelly and then sought indemnification under the loading and unloading provisions of the policy insuring the truck. The Commission was held vicariously liable for its employees' actions and was found to be "using" the truck involved through him. Id. at 321. The court limited "the insured" in the exclusion clause for workers' compensation to claims by an employee of that insured (named or additional) who seeks protection under the policy, and hence held it inapplicable where the employer-employee relationship does not exist between the litigants. 28 N.J. at 19.
[6] Generally our workers' compensation laws would bar recovery in the usual case even without the policy exclusion. Indeed, if there were no insurance here, Amerada would have no indemnity claim against Carrier because of the bar of workers' compensation. Certainly this would be so absent a contractual indemnity, see Ramos v. Browning Ferris Industries, 103 N.J. 177, 188, 191 (1986). In addition, the policy here expressly excludes contractual indemnity. Forum urges that it is an absurd result to allow indemnity where there is insurance, but to not allow indemnity where there is no insurance. We agree that the result should not turn on the fortuitous circumstance of the existence of an insurance policy. In any event, the issue most often arises as a result of disputes between insurance carriers attempting to shift the risk among themselves.
[7] See, e.g., Forsythe v. Teledyne Turner Tube, 209 N.J. Super. 608, 613 n. 2 (App.Div. 1986); Bellafronte v. General Motors Corporation, 151 N.J. Super. 377 (App.Div. 1977), certif. den. 75 N.J. 533 (1977); Maryland Casualty Co. v. N.J. Mfrs. Cas. Ins. Co., 48 N.J. Super. 314 (App.Div. 1958), aff'd 28 N.J. 17 (1958); see Farmers Ins. Group v. Home Indemnity Co., 108 Ariz. 126, 128-129, 493 P.2d 909, 911-912 (1972); Granite State Ins. v. Transamerica Ins., 148 Ariz. 111, 114, 713 P.2d 312, 315 (Ct.App. 1985); Willett Truck Leasing v. Liberty Mut. Ins., 88 Ill. App.3d 133, 137-138, 43 Ill.Dec. 376, 410 N.E.2d 376, 379-380 (1980); Michigan Mut. Liability Co. v. Ohio Cas., 123 Mich. App. 688, 695-698, 333 N.W.2d 327, 331-332 (1983), for a discussion of the policy provisions implicated herein. See generally Annotation, "Validity, Construction, and Application of Provision in Automobile Liability Policy Excluding From Coverage Injury or Death of Employees of Insured," 48 A.L.R.3d 13, 136-142 (1973).
[8] We recognize that the policy contains a severability of interests clause within the definition of "Insured." That clause states:

The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability....