670 A.2d 577

IN THE MATTER OF JOSEPH KENNEDY, PLAINTIFF, v. JEFFER-
SON SMURFIT COMPANY AND CONTAINER CORP. OF AMER-
ICA, DEFENDANTS–THIRD PARTY PLAINTIFFS–RESPON-
DENTS, v. NORTH OPERATING COMPANY, THIRD PARTY
DEFENDANT RESPONDENT, AND NEW JERSEY MANUFAC-
TURERS INSURANCE COMPANY, THIRD PARTY DEFEN-
DANT APPELLANT,ULTRA PACKAGING, THIRD PARTY DE-
FENDANT.

JOSEPH KENNEDY, PLAINTIFF, v. JEFFERSON SMURFIT COM-
PANY AND CONTAINER CORP. OF AMERICA, DEFENDANTS–
APPELLANTS, v. NORTH OPERATING COMPANY, THIRD
PARTY DEFENDANT RESPONDENT, AND ULTRA PACKAG-
ING AND NEW JERSEY MANUFACTURING INSURANCE
COMPANY, THIRD PARTY DEFENDANTS.

JEFFERSON SMURFIT COMPANY AND CONTAINER CORP. OF
AMERICA, PLAINTIFFS, v. FIREMAN'S FUND INSURANCE
COMPANY, AMERICAN INSURANCE COMPANY AND NEW
JERSEY MANUFACTURERS INSURANCE COMPANY, DE-
FENDANTS.

Superior Court of New Jersey
Appellate Division

Argued November 6, 1995—Decided January 23, 1996.

Before Judges HAVEY, D'ANNUNZIO and BRAITHWAITE.

*George W. Connell* argued the cause for appellant New Jersey Manufacturers Insurance Company (*Connell, Foley & Geiser,* attorneys; *Mr. Connell* and *William J. Gross,* on the brief).

*Joseph DiRienzo* argued the cause for appellant and respondent Jefferson Smurfit Company and Container Corp. of America (*DiRienzo & Wallerstein,* attorneys; *Martin B. Wallerstein,* on the brief).

*Michael C. Urciuoli* argued the cause for respondent North Operating Company (*De Veaux, Urciuoli & Seidman,* attorneys; *Mr. Urciuoli,* on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

New Jersey Manufacturers Insurance Company (NJM) appeals from a summary judgment determining that it had to provide coverage to Jefferson Smurfit Company (Jefferson) for a personal

injury claim asserted by Joseph Kennedy. Jefferson appeals from a summary judgment in favor of North Operating Company (North) determining that North was not required to indemnify Jefferson under a contractual indemnification clause.

Jefferson manufactures cardboard. Kennedy was the owner and operator of a tractor which he leased to North. North was in the trucking business and had entered into a written agreement to transport cardboard for Jefferson to Jefferson's customers.

In February 1991, Kennedy, using his tractor pulling a North trailer, was delivering a shipment of cardboard from Jefferson to Ultra Packaging (Ultra). The cardboard was on wood pallets in bundles weighing hundreds of pounds. Each pallet held two bundles of cardboard. When Kennedy arrived at Ultra, an Ultra employee, using a forklift, began to unload the palletized cardboard. The employee had removed five pallets when the bundles of cardboard on the sixth pallet fell on Kennedy, burying him and causing substantial injury.

Kennedy contended that the wooden pallet collapsed, causing the bundles to shift and fall. According to Kennedy, he observed rotten pieces of pallet wood after the incident. In a personal injury action which Kennedy brought against Jefferson, Kennedy alleged that Jefferson caused his injuries by negligently selecting and using defective pallets. Jefferson filed a third-party complaint against North, seeking indemnification.

While Kennedy's personal injury action was pending, Jefferson began a separate declaratory judgment action against NJM and other carriers not involved in this appeal. NJM provided automobile liability coverage to North. Jefferson contended that it was entitled to coverage under NJM's policy because Jefferson was using North's trailer when Kennedy was injured.

Eventually, Jefferson settled Kennedy's claim for $750,000. After Jefferson settled the Kennedy claim, NJM and North moved for summary judgment against Jefferson, and Jefferson crossmoved for summary judgment. As previously indicated, the trial

court granted Jefferson's motion against NJM on the ground that Jefferson was entitled to coverage because it was using North's vehicle when Kennedy was injured. The court granted North's motion for summary judgment against Jefferson on the indemnity claim because the court determined that Jefferson could not be indemnified for its own negligence.

We first address NJM's appeal. NJM contends that its policy does not cover Jefferson for Kennedy's claim because Jefferson's negligent act of selecting a defective pallet was not an integral part of the loading and unloading operation. NJM also contends that Jefferson never established the reasonableness of the $750,-000 settlement with Kennedy.

■ An insurer's obligation to provide coverage to persons using a vehicle in a loading and unloading context is imposed by statute and is broad in scope. *Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay*, 119 *N.J.* 402, 407, 575 *A.*2d 416 (1990). The statutes obligate motor vehicle liability insurers to provide coverage for injuries "arising out of the ownership, maintenance, operation or use of" a vehicle. *N.J.S.A.* 39:6A–3; *N.J.S.A.* 39:6B–1.

■ In the present case, NJM's policy, which it describes as a "Truckers Policy," tracks the statutory language regarding liability coverage. It provides:

We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

NJM does not contest the fact that North's trailer, which was being unloaded when Kennedy was injured, was a covered auto.

NJM's policy contains the following definition of "Who is insured." It provides:

1. You [North] are an insured for any covered auto.
2. Anyone else is an insured while using with your permission a covered auto you own, lease or borrow except:

The exceptions are irrelevant to this appeal.

The issue is whether Kennedy's injury was "caused by an accident ... resulting from [Jefferson's] ... use of" North's

trailer. If the answer is yes, then North's policy covers Jefferson for liability arising out of Kennedy's injury.

New Jersey courts have addressed the scope of omnibus coverage in a loading and unloading context in a number of cases. In *Ryder, supra,* the Supreme Court discussed, with approval, *Drew Chemical Corp. v. American Fore Loyalty Group,* 90 *N.J.Super.* 582, 218 *A.*2d 875 (App.Div.1966) and *Bellafronte v. General Motors Corp.,* 151 *N.J.Super.* 377, 376 *A.*2d 1294 (App.Div.), *certif. denied,* 75 *N.J.* 533, 384 *A.*2d 513 (1977). *Drew* arose out of a personal injury claim by one Byford, an employee of Nappi Trucking Corp. Byford drove a tank truck to Drew Chemical Corp. (Drew) to deliver a load of fatty acid. Evans, Drew's employee, connected the tank truck to Drew's pipeline for the purpose of transferring the fatty acid to a vat. The connection was made using a flexible hose eighteen feet in length, which was part of the truck's equipment. The hose was attached to the truck and to the pipeline, but when Evans activated a pump, the acid did not flow. At Evans' request, Byford uncoupled the hose from the truck while Evans, using pressured steam, attempted to unclog the pipeline. During this operation, the free end of the hose began to whip, striking Byford.

Byford sued Evans and Drew, and Drew sought coverage under Nappi's automobile policy. The policy defined use of a vehicle as including loading and unloading. The carrier argued that it was not obligated to provide coverage because the unloading of the acid had not commenced and, alternatively, because unloading was not the efficient cause of Byford's injury. The trial judge granted summary judgment to the carrier on the second ground.

This court reversed the judgment. We noted that two doctrines had evolved regarding coverage issues in loading and unloading contexts: the "coming to rest" doctrine and the "complete operation" doctrine. We determined that the complete operation doctrine was "the more modern and enlightened one, supported by the weight of authority." *Id.* at 587, 218 *A.*2d 875. Under the complete operation doctrine, unloading "covers[s] the entire pro-

cess involved in moving the goods, from the moment they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made." [1] *Id.* at 586–87, 218 *A.*2d 875. Applying this definition, we ruled that Byford's injury occurred during unloading, though the fatty acid had not yet begun its movement from the tank truck into the pipeline. We observed that the complete operation doctrine "obliterates the distinction between preparations for loading and the loading itself...." *Id.* at 587, 218 *A.*2d 875.

We resolved the issue of causation in favor of coverage. In doing so, we stated:

> In determining the existence of a causal connection, the proper approach is to consider whether the accident was, within reason, causally connected with the *complete operation of unloading* the Nappi truck. While the act of clearing the line was normally not a part of the unloading operation, it was, under the existing circumstances, a necessary one.... In short, the process of unloading the acid necessitated the very act (the clearing of the line) which, in turn, caused the accident.
>
> [*Id.* at 591, 218 *A.*2d 875.]

*Bellafronte, supra,* involved a policy which, unlike the policy in *Drew,* did not define the use of a vehicle as including loading and unloading. To the contrary, the policy in question, issued by NJM, excluded as an additional insured any person loading or unloading the insured vehicle other than the named insured's employees, lessees, or borrowers. One of the issues in *Bellafronte,* therefore, was whether the word "use" in New Jersey's financial responsibility statute, included the loading and unloading of a vehicle's cargo.

---

[1] We defined the "coming to rest" doctrine:

> Under the "coming to rest" doctrine, unloading comprises "only the actual removing or lifting of the article from the motor vehicle up to the moment when the goods which are taken off the motor vehicle actually come to rest and every connection of the motor vehicle with the process of unloading cases."
>
> [*Drew, supra,* 90 *N.J.Super.* at 586, 218 *A.*2d 875 (quoting Annotation, *Risks Within 'Loading and Unloading' Clause of Motor Vehicle Liability Insurance Policy,* 95 *A.L.R.*2d 1122, 1129 (1964)).]

The facts in *Bellafronte* were uncontested. Plaintiff was employed as a truck driver by Morrison Steel Company, a distributor of steel products. The plaintiff had delivered a load of steel to General Motors Corporation (GMC). One of GMC's employees began unloading the steel using GMC's crane. The crane's magnet attracted a steel beam which was still on the truck, causing the beam to move, striking and injuring the plaintiff. In plaintiff's suit against GMC, defendant sought coverage from NJM, Morrison's automobile liability carrier.

Under the exclusion for loading or unloading in NJM's policy, GMC and its employees would not be covered. We held, however, that the word "use" in the statutory omnibus coverage included the loading and unloading of a vehicle and, therefore, NJM's attempted exclusion was invalid. *Bellafronte, supra,* 151 *N.J.Super.* at 382–83, 376 *A.*2d 1294. We also held that the injury to plaintiff arose out of the use of the vehicle because "one who is in the process of unloading cargo from the vehicle is, for purposes of the omnibus coverage, a user of the vehicle." *Ibid.*

*Parkway Iron and Metal Co. v. New Jersey Mfrs. Ins. Co.,* 266 *N.J.Super.* 386, 629 *A.*2d 1352 (App.Div.1993), *certif. denied,* 135 *N.J.* 302, 639 *A.*2d 301 (1994), involved an attempt by NJM to avoid our *Bellafronte* decision. The case arose out of an injury allegedly caused by a crane operated by the consignee's employee for the purpose of unloading a truck. NJM's policy insuring the truck for motor vehicle liability contained an exclusion which provided that its insurance did not apply to injury "resulting from the movement of property by a mechanical device . . . not attached to the covered auto." *Id.* at 387, 376 *A.*2d 1294. We held that the exclusion was invalid because it limited the statutorily required omnibus coverage for use of a motor vehicle.

In the present case, as previously indicated, NJM's position is sharply focused. NJM contends in its brief that it is not obligated to provide coverage to Jefferson because "Jefferson's negligent selection of a defective pallet was the proximate cause of Kennedy's injuries and this was not an integral part of the overall

loading and unloading operation. Because Jefferson Smurfit was not using the North trailer when it selected the *defective* pallet, it does not qualify as an omnibus insured under the NJM policy." In advancing this argument, NJM relies on *Cenno v. West Virginia Paper & Pulp Co.*, 109 *N.J.Super.* 41, 262 *A.*2d 223 (App.Div.), *certif. denied,* 56 *N.J.* 99, 265 *A.*2d 149 (1970).

*Cenno* involved an injury to plaintiff truck driver while he was delivering a load of baled cardboard manufactured by defendant, West Virginia Paper & Pulp Co. (Pulp). Pulp had baled the cardboard at its Hoboken plant, utilizing metal baling bands manufactured by Acme Steel Company. When plaintiff arrived at the consignee's plant, he attempted to move one of the bales within the truck. In doing so, plaintiff pulled on a metal band securing the bale. The band came apart and, as a result, plaintiff lost his balance and fell out of the truck.

Plaintiff sued Pulp and Acme Steel. Plaintiff contended that Acme Steel was responsible because it had defectively manufactured the bands. Plaintiff also contended that Pulp had negligently banded the bale, resulting in his injury. A jury determined that Pulp had been negligent, but returned a verdict of no cause for action in favor of Acme Steel. Based on this verdict, the trial court ruled that Pulp and Acme were additional insureds under a motor vehicle liability policy issued by American Mutual Liability Insurance Company (American) insuring the truck.

American's policy was written before our decision in *Bellafronte, supra.* It contained a definition of "use" as including the loading and unloading of the insured vehicle. A panel of this court reversed the trial court's decision. We noted that the jury determined that the accident was the result of Pulp's negligent banding of the cardboard. We concluded, therefore, that "the acts charged to defendants antedated delivery of the goods to Ahrens Motor Trucking, were unrelated to the loading or unloading of the truck, and were not covered by the comprehensive liability policy. The policy does not embrace all accidents happening during the

loading or unloading of the truck regardless of causation." *Cenno, supra,* 109 *N.J.Super.* at 45, 262 *A.*2d 223. We further stated:

> The policy affords coverage as an additional insured to one while *using* the vehicle and specifies that '(c) use of an automobile includes the loading and unloading thereof.' Therefore, the pertinent inquiry is whether the acts of negligence charged to defendants were a part of the overall loading or unloading operation so that, in the commission of the negligent acts charged, defendants can be said to have been using the vehicle and thereby became additional insureds under the policy. In other words, did the negligent act which caused the injury or is alleged to have caused it constitute a part of the loading or unloading process? The answer is clearly in the negative.
>
> *[Ibid.]*

The court summarized its holding, utilizing the following language:

> In summary, we conclude that unless the alleged negligent act which is alleged to have caused the accident was an integral part of the overall loading or unloading operation, so that the mishap is causally connected with such loading and unloading and did not merely occur during it, the person charged with the negligent act is not considered to have been using the vehicle so as to be covered by the vehicle's liability policy for such act as an additional assured.
>
> [*Id.* at 47, 262 *A.*2d 223.]

We are persuaded that the present case differs from *Cenno* in at least two important respects. In *Cenno* the court interpreted a *policy* provision defining "use" as including loading and unloading. This court decided *Cenno* before our opinion in *Bellafronte.* In *Bellafronte,* as previously stated, we determined that the word "use" in the statutorily required coverage included loading and unloading. In applying the statutory language, we also concluded in *Bellafronte,* that "one who is in the process of unloading cargo from the vehicle is, for purposes of omnibus coverage, a user of the vehicle." 151 *N.J.Super.* at 382–83, 376 *A.*2d 1294. In *Bellafronte,* we applied the statutory meaning of "use" to include within the umbrella of coverage a consignee's employee who is operating a crane, not connected with the insured vehicle, to unload steel. We perceive a qualitative difference between a case such as *Cenno,* in which the court construed policy language as an exercise in contract interpretation, *see Maryland Casualty Co. v. New Jersey Mfrs. Ins. Co.,* 48 *N.J.Super.* 314, 321, 137 *A.*2d 577 (App.Div.) (holding that a clause in a policy defining use of a

vehicle as including loading and unloading "is a phrase of extension, expanding the term 'while using the automobile.' "), *aff'd*, 28 *N.J.* 17, 145 *A.*2d 15 (1958), and cases such as *Bellafronte* and the present case, in which we must determine the scope of compulsory coverage mandated by statute. *See Ryder, supra*, 119 *N.J.* 402, 575 *A.*2d 416.

The other respect in which the present case differs from *Cenno* is factual. In the present case, the palletizing of the cardboard bundles and, therefore, selection of the pallets, were "preparatory actions" to shipment of the goods. *Cenno, supra*, 109 *N.J.Super.* at 47, 262 *A.*2d 223. The use of pallets is a time-tested and common technique to facilitate the movement and shipment of goods. We conclude, therefore, that the use and selection of the pallets was "an integral part of the overall loading or unloading operation...." *Ibid.* It is not clear in *Cenno*, however, whether baling with metal bands was a requirement of Pulp's customer or was the typical method of shipment utilized by Pulp in the 1960's.

Finally, to the extent that the differences between the present case and *Cenno* are not legally significant, we disagree with *Cenno*. In *Cenno*, as in the present case, manufacturers of goods were using a trucking company's trailers to transport goods. In both cases, devices used to facilitate loading, shipping and unloading failed, causing injury. The court in *Cenno* avoided coverage on the ground that Pulp's culpable act occurred outside the loading process. We are persuaded that the line drawn in *Cenno* is unworkable and would tend to narrow unduly the broad scope to be given omnibus coverage. *See Ryder, supra*, 119 *N.J.* at 407, 575 *A.*2d 416. We so conclude because the argument could be made in many loading and unloading contexts that the culpable act of the shipper or consignee occurred prior to and outside the loading and unloading process, though the injury occurred during that process. For example, in *Bellafronte*, there would have been no coverage under *Cenno* if GMC's culpable act was in failing to adequately train the crane operator or in selecting a crane inap-

propriate for the unloading of steel.[2]

NJM's reliance on *Lesniakowski v. Amerada Hess Corp.*, 225 *N.J.Super.* 416, 542 *A*.2d 940 (App.Div.1988); *Forsythe v. Teledyne Turner Tube*, 209 *N.J.Super.* 608, 508 *A*.2d 1156 (App.Div. 1986); and *Wakefern Food Corp. v. General Accident Group*, 188 *N.J.Super.* 77, 455 *A*.2d 1160 (App.Div.1983) is misplaced because they are distinguishable from the present case. In *Lesniakowski*, we denied coverage to Amerada Hess on the ground that Amerada was not using the insured vehicle when plaintiff was injured. *Forsythe* involved an injury caused by a defective loading dock plate and *Wakefern* involved an injury caused when plaintiff tripped over debris on the pavement adjacent to a loading dock. In those cases we denied coverage under automobile liability policies because we concluded that the injured plaintiffs had asserted causes of action based on premises liability. In *Forsythe*, Judge Petrella defined the distinction:

> We are unable to discern how negligence of the owner of premises in the inspection, maintenance and repair of its own loading dock, resulting in collapse of the docking plate upon a trucker engaged in attempting to prepare to unload, can reasonably be viewed as negligent use of the truck, triggering insurance coverage under the vehicle's policy. *See Wakefern Food Corp. v. General Acc. Group, supra* (188 *N.J.Super.* at 84) [455 *A*.2d 1160]. We distinguish between cases where there is negligence in the actual loading and unloading operation, such as by an employee of a warehouse in loading a truck, and those cases where the negligence is not directly related to the loading and unloading, but the accident occurs during the loading and unloading process, such as where there is a dangerous condition on the premises of the warehouse.
>
> [*Forsythe, supra*, 209 *N.J.Super.* at 616, 508 *A*.2d 1156.]

The present case involves an allegation of negligence in loading the truck using a defective pallet. We conclude that NJM's policy covers Jefferson for Kennedy's injury, because the injury was "causally connected with the complete operation of" loading and unloading North's truck. *Drew, supra*, 90 *N.J.Super.* at 591, 218 *A*.2d 875. We remand for a hearing to determine the reasonableness and good faith of Jefferson's settlement with Kennedy. *See*

---

[2] We do not address the coverage issue in the context of an injury caused by a defect in the product being shipped, because those facts are not before us.

*Griggs v. Bertram*, 88 *N.J.* 347, 364, 443 *A.*2d 163 (1982); *Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford*, 72 *N.J.* 63, 73, 367 *A.*2d 864 (1976).

In light of our determination that NJM must cover Jefferson for Kennedy's injury, we deem Jefferson's appeal from the judgment in favor of North on Jefferson's indemnity claim to be moot.

The judgment in favor of Jefferson against NJM is affirmed. Jefferson's appeal from the judgment in favor of North is dismissed as moot. The case is remanded for further proceedings consistent with this opinion.