### GREAT AMERICAN INSURANCE COMPANY, Appellant,

v.

### GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, Limited, Appellee.

No. 20009.

United States Court of Appeals
Fifth Circuit.

Aug. 8, 1963.

Anthony Reinert, Harry G. Hinckley, Jr., Wicker, Smith, Blomqvist, Hinckley & Davant, Miami, Fla., for appellant.

Henry Burnett, Miami, Fla., for appellee; Fowler, White, Gillen, Humkey & Trenam, Miami, Fla., of counsel.

Before JONES, BROWN and LEWIS,[*] Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is another contest between two insurers of a common assured neither of whom bears any relation to the other, so that the standing of one to sue the other rests finally on an intricate legalistic structure.

The protagonists are Great American[1] who issued a Comprehensive General Liability policy (CGL) and General Accident[2] who issued a standard automobile policy covering vehicles. The common assured was Trees.[3] It all grows out of an accident occurring during the time that Trees was carrying out its contract with Power Company[4] by which, for a fee, Trees removed, replaced and transplanted trees in the Miami area.

The contract between Trees and Power Company requires two things of significance here. The first was that Trees was to provide liability insurance. Second, Trees agreed to indemnify Power Company.[5] As to the first (insurance), this was afforded through the two policies now in controversy. Concerning the second (the indemnity), the CGL policy insured Trees' contractual indemnity liability under an appropriate broad form endorsement.[6]

Pursuant to the contract, Power Company directed Trees to transplant a coconut palm tree in Miami Springs, Florida. For the job, Trees supplied its own land motor vehicle equipped with an A-frame and a cable. Loyd Bell, Jr., an employee of Trees, fastened the cable to the palm tree. When the coconut palm was hoisted, the palm fronds came in contact with Power Company's overhead high voltage line causing severe injuries to Bell. Bell brought suit in the state court against Power Company alleging several grounds of negligence, but principally a failure of Power Company to furnish him a safe place to work. Under the indemnity agreement, note 5, supra, which Great American insured under its CGL policy, it undertook the defense of the suit which resulted in a judgment for approximately $23,000. Great American has paid this and now wants to get it back. Its target, by a

---

[*] Of the Tenth Circuit, sitting by designation.

[1.] Great American Insurance Company.

[2.] General Accident Fire & Life Assurance Corporation, Ltd.

[3.] Newcomb Tree Surgeon, a proprietorship.

[4.] Florida Power and Light Company.

[5.] Stamped across the face of the purchase order contract was a provision by which Trees as contractor agreed "to perform the work described * * * as an independent Contractor * * * and Contractor, on acceptance of this purchase order, agrees to protect, defend and hold the [Power Company] free and unharmed against any liabilities whatsoever resulting in connection with performance of the described work by Contractor or its employees."

[6.] The policy endorsement described this as "Broad Form Contracts Complete Indemnification of the Owner (Indemnitee) [Power Company] for all accidents arising out of the Indemnitor's operations without reference to negligence."

No question presumably was presented in the handling of the State Court damage suit, nor in the Court below or here as to whether the indemnity agreement, see note 5, supra, was sufficiently specific to cover the accident in question alleged to have resulted from the indemnitee's (Power Company) negligence. Cf. American Agricultural Chemical Co. v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856; Jacksonville Terminal Co. v. Railway Express Agency, Inc., 5 Cir., 1961, 296 F.2d 256, cert. denied, 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18.

direct suit for declaratory relief—without going through the steps of an assignment by Power Company, by Trees, or both—is General Accident, the automobile insurer of Trees' truck.

■ Of course Great American does not claim either to be a party to General Accident's policy, or that it was made for it as a third party beneficiary. Its claim is that it has the advantage of a contract with a stranger by reason of a series of involved steps through which it succeeds to the rights of one or more or all of such persons against General Accident pursuant to the terms of the automobile policy. Severely simplified, the theory is that Power Company was an assured under the automobile policy, and Great American somehow, someway, sometimes steps into its shoes.

The first step rests on the insuring clause which undertakes "to pay on behalf of the insured * * *" such sums for which the assured is legally obligated "caused by accident and arising out of the ownership, maintenance or use of" the scheduled vehicle. Use, of course, includes loading and unloading.[7] Consequently, broadly stated, the policy covers any accident arising out of the ownership, maintenance, use, loading or unloading of the automobile. Since the policy names Trees as the assured, the next step is to broaden the scope of the persons insured. This is done through the omnibus clause[8] which includes as an assured any person using, loading, unloading a scheduled vehicle and any person or organization legally responsible for the use, loading, unloading thereof.

Next comes the third step. This arises because it is uncontradicted that Power Company had no person on or near the truck or in the vicinity of the work being done. Hence, neither Power Company nor any of its employees were using, loading, unloading the truck. Consequently, to connect Power Company into this policy it has to be brought into the category of "any person or organization legally responsible for the use", loading, unloading of the vehicle. Now we take the fourth step. Based upon a number of Florida cases whose scope we need not examine,[9] the contention is made that since Bell was an employee of an independent contractor and hence an invitee on the Power Company's "premises" and one toward whom the Power Company must exercise the highest degree of care in providing a safe place to work, the Power Company was "legally responsible for the use" of this truck. To put it another way, the theory is that since Power Company under some circumstances could be held legally liable where an employee of an independent contractor used a truck on its "premises" this is the equivalent of the truck being used, loaded, unloaded by a person for whom it is "legally responsible."

■ Even though approached with the greatest latitude, we do not think Great American's claim withstands analysis. But in so concluding, we would emphasize at the outset that there can be no real question about the vehicle being "used." Much is said in the briefs about the extension of use by loading or unloading. That is not needed here. For here the purpose of the truck was to hoist the palm tree. Whether the palm was to be hoisted onto the bed of the truck and then transported some distance

7. See paragraph 4(c). "4. Purposes of Use Defined * * * (c) Use of an automobile includes the loading and unloading thereof."

8. Article III. "Definition of Insured. The unqualified word 'insured' includes the named insured and also includes any person using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof * * *."

9. Vanlandingham v. Florida Power & Light Co., 1944, 154 Fla. 628, 18 So.2d 678; Florida Power & Light Co. v. Brinson, Fla., 1953, 67 So.2d 407; Florida Power & Light Co. v. Robinson, Fla., 1953, 68 So.2d 406; and Ahern v. Florida Power & Light Co., Fla.App., 1961, 129 So.2d. 457.

for transplanting, or whether, as seems more likely, it was simply hoisted sufficiently so that the truck could maneuver the tree to its new, but nearby, location is not revealed.[10] But the truck was being used. More than that, it was that use of the truck which, in a physical, if not legal, sense brought about the accident. For the accident occurred when the palm fronds came in contact with the power line while the hoisting operation was going on. Consequently, it is unnecessary for us to make an *Erie*-Florida choice between the "coming to rest," or the "completed operations" doctrine.[11] But while we hold with General Accident, we do not adopt its contention that the showing of a relationship between the vehicle and the cause of the accident was inadequate.[12]

Nor we do not think that we should rest affirmance on General Accident's contention that the employee exclusion of its policy prevents coverage since Bell, the injured plaintiff, was an employee of Trees, the named assured.[13] Of course it is Great American's theory that it gets the benefit of General Accident's policy because Power Company was an additional omnibus insured. That brings into play the running, ceaseless controversy over "Who is the Insured?" on which courts have differed and continued to divide so sharply. See, American Agricultural Chemical Co. v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856, 860, 862 (concurring opinion). With material so equivocal, we ought not to predict what the Florida Courts will finally hold.[14]

10. The matter was presented in an awkward form by motion to dismiss the complaint and not the easier route of summary judgment. The last amendment, for example, attached a photograph simulating the operation. The complaint stated, "that at said time and place, Loyd Bell, Jr. was using a land motor vehicle * * * to remove, load, unload and transplant the said tree. * * * While engaged in such work, said Loyd Bell, Jr. was placing a cable attached to the said land motor vehicle, to the palm tree. While Loyd Bell, Jr. was in contact with the said cable, the palm frond of the tree came in contact with the high voltage power line * * *."

11. These problems are extensively discussed in Risjord, Loading and Unloading, 13 Vanderbilt L.Rev. 903. The cases reviewed indicate that in many jurisdictions the vehicle need not be in any way the instrumentality of harm, and hence coverage is not equated with a sort of personified fault of the vehicle. See, e.g., the Hatchway, Injury in Building, and Sidewalk cases. But without regard to the location of the vehicle, the absence of negligence in its maintenance or operation, or a physical relation between operation of the vehicle and the accident, the question always remains whether the accidental injury arises out of the loading or unloading of the vehicle. If it does, then those who are engaged in that operation are "using" the vehicle within the coverage of the policy, even though they are strangers to the vehicle owner or its crew as the celebrated Wagman case

made so clear. Wagman v. American Fidelity & Casualty Co., 1952, 304 N.Y. 490, 109 N.E.2d 592, affirming 279 App.Div. 993, 112 N.Y.S.2d 662 (1952), affirming memo. 201 Misc. 325, 108 N.Y.S.2d 854 (Sup.Ct.1951); Bond Stores, Inc. v. American Fidelity & Casualty Co., Sup. Ct., 1954, 133 N.Y.S.2d 297; See also Brown & Risjord, Loading and Unloading: The Conflict Between Fortuitous Adversaries, 29 Ins. Counsel Journal 197; Risjord, 1961 Highlights of Automobile Liability Insurance Law, 12 Fed. of Ins. Counsel Quarterly, 41, 41–46.

12. General Accident cites 7 Appleman, Insurance Law & Practice § 4322, p. 157, and the statement in terms of "the efficient and predominating cause" stressed in 160 A.L.R. 1272.

13. The policy provided: "This policy does not apply: * * * (b) under coverage A, to bodily injury to or sickness, disease or death of any employee of the Insured arising out of and in the course of * * * (2) other employment by the Insured; (c) under coverage A, to any obligation for which the Insured or any carrier as his Insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefit law, or under any similar law; * * *."

14. Michaels v. United States Fidelity & Guaranty Co., Fla.App., 1961, 129 So. 2d 427, has statements indicating that the Court has chosen the view that "insured" means the named insured. But based as it expressly was on the subcontractor

■ But assuming, arguendo, that coverage is not denied Power Company in the defense of a claim by Bell, an employee of the named assured, it is nonetheless clear to us that the claim fails. This is so because Power Company is not, and cannot here properly claim the status of an omnibus assured. It was not using the truck. Nor were any of its employees. Neither it nor anyone for whom it had a legal responsibility was engaged in directing or supervising or controlling the use of the truck. The only persons using the truck were employees of Trees. Power Company had no legal responsibility for the acts of the employees of Trees. It might, and undoubtedly did have, an obligation to them as well as to members of the public. But it was not legally responsible on the usual doctrines of respondeat superior for their acts. Nor was it responsible legally for the use of the truck. Assuming that the cases (see note 9, supra) hold what is claimed of them, the legal liability to employees of Trees or members of the public arises out of Power Company's duties in the transmission of electricity. That the consequence of this liability comes into being out of the circumstance that others were using a vehicle in the vicinity of its electricity facilities does not make their use the use of Power Company. The party claiming to be an omnibus assured either himself or through servants, agents, employees or other persons for whom he has a legal responsibility must be engaged in physical operations which fairly can be described as using, loading, unloading a vehicle. It is not enough that the vehicle is being used, loaded, unloaded. Physical operational use of the vehicle, at least to some degree, by a party or by one for whose acts it has a legal responsibility is required to give the stranger the status of an omnibus assured.[15]

■ All of this seems borne out by a more detailed consideration of Great American's theory. It talks in terms of subrogation. But to whose rights and what rights do they claim to be subrogated? The theory is vague indeed. Of course, the policy provides that Great American shall be subrogated to the

provisions of the Florida Workmen's Compensation Act, §§ 440.10, 440.11, F.S.A. and Webb v. American Fire & Casualty Co., 1941, 148 Fla. 714, 5 So. 2d 252; Employers Liability Assurance Corp. v. Owens, Fla., 1955, 78 So.2d 104, each of which involved an employee of the insured sued and claiming coverage, this case really seems to rest on the proposition that the borrowed servant operating the crane in the loading of the truck (and hence omnibus assured under the truck policy) and the injured employee of the named assured were fellow servants under common law doctrines so coverage was lacking under the cross-employee exclusion.

In the typical unloading, loading or comparable situation where an omnibus insured, frequently a stranger to the truck crew, (here Power Company), claims coverage under the automobile policy for injury to an employee of the named insured (here Trees), nine states (Arkansas, California, Louisiana, Minnesota, New Jersey, New York, Oregon, Pennsylvania, and Wisconsin) follow the principle that the employee exclusion is applied to deny coverage for *any* insured

*only* with respect to injury to his own employees. On the other hand, 12 states (Alabama, Georgia, Illinois, Indiana, Kentucky, Maryland, Mississippi, Missouri, South Dakota, Tennessee, Texas, Washington) deny coverage to the omnibus assured as to a claim by an employee of the named assured against the omnibus assured. See Risjord, Automobile Liability Insurance—Is There Coverage?, Univ. of Miss. Institute on Elements of Automobile Liability Coverage, February 5, 1963.

15. Wagman is a good illustration of the limitations. The Court found that the supervisor Wagman, going to and from the curb and the store, was engaged in the loading of the delivery truck. While this set in motion coverage under the truck insurance for both Wagman and his employer (Bond's Clothing Store), there is no suggestion that some other employee of Bond's would have been covered under the truck policy had he, in the course of an errand wholly unrelated to the loading of the nearby truck, wandered into the same pedestrian.

rights of its assured.[16] But what rights does Trees, the named assured, have? So far as here revealed, Trees has no evident right of action against Bell, or for that matter any other of its employees (if any) then engaged in the transplanting operations.[17] Does Trees have any rights (to which Great American may be subrogated) against its automobile insurer, General Accident? We can, of course, assume that vis-a-vis a CGL and an automobile insurer, the CGL underwriter through the guise of subrogation can compel its assured to get protection from the automobile policy for sums which the assured has become legally obligated to pay because of accident arising out of the ownership or use of an automobile. But there is neither charge nor proof that Trees had any legal obligation whatsoever either for the damages sustained by Bell, or for the cause of the occurrence from a legal point of view. Trees was not held liable because of negligence of it or any one of its servants. Indeed, it has not been held liable at all. So far as this record reflects, Great American, conscious of its obligation to defend claims within the terms of the indemnity, see note 5, supra, undertook the defense of Power Company direct. Without going through the form of a nominal payment by its assured (Trees) or by Power Company it paid the judgment direct. The liability of Trees, if there is one at all, is not one imposed as a result of accident arising out of the operation or use of the vehicle. The liability is imposed because of the plain language of the contract of indemnity.

█ There being no rights of Trees to which Great American could effectually subrogate, what other rights are open? To whom do they belong? All that is left is Power Company. The complaint shows only that Great American undertook the defense of Bell's suit because of the indemnity agreement. The judgment was paid by it with no indication of any assignment of rights by Power Company. Assuming that under these unusual circumstances, this put Great American in the position of a subrogee of one to whom it owed no legal duty, not a mere volunteer,[18] it can push this loss off onto another only by showing that Power Company was using the truck.

The truck was assuredly used. But it was not operated, used, loaded, unloaded by Power Company or any one for whose acts in thus using the vehicle it was legally responsible. The intricate legal structure fails at this point.

Affirmed.

JONES, Circuit Judge, concurs in the result.

16. Paragraph 13. "Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

17. This Tinkers-to-Evers-to-Chance assertion by the employer (Bond's) of a right of action over against its negligent employee (Wagman) may have been critical in Wagman. Note 11, supra. Cf. Lamberti v. Anaco Equipment Corp., 1962, 16 A.D.2d 121, 226 N.Y.S.2d 70; Risjord & Austin Case 2465; Travelers Ins. Co. v. General Casualty Co. of Amer., D.C.Idaho, 1960, 187 F.Supp. 234; Risjord & Austin Case 2096.

18. Great American urges the general Florida equitable principle that subrogation is to be liberally allowed where one has paid the debt of another, etc. citing Furlong v. Leybourne, Fla.App., 1962, 138 So.2d 352; Ulery v. Asphalt Paving, Inc., Fla. App., 1960, 119 So.2d 432.