256 N.J. Super. 382 (1992)
607 A.2d 175
GREENTREE ASSOCIATES, PLAINTIFF-APPELLANT,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1992.
Decided May 14, 1992.
*383 Before Judges R.S. COHEN, A.M. STEIN and KESTIN.
John J. Welch argued the cause for appellant (John J. Welch and Robert Ruggieri on the brief).
*384 James J. Horan argued the cause for respondent (Minichino & Mautone, attorneys, James J. Horan on the letter brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
This appeal requires us once again to explore the breadth of an automobile liability insurer's coverage obligation for a "loading and unloading" accident. The specific question is whether a general contractor who is charged with failure to supervise a construction site is a "user" of a subcontractor's construction vehicles when an employee of the subcontractor is injured during the refueling of one of the vehicles by the other. We conclude that the general contractor is not a user of the subcontractor's vehicles, and therefore is not entitled to coverage under the liability policy covering those vehicles.
Plaintiff Greentree Associates (Greentree) was the general contractor at a large housing project. Greentree hired Jay Prusko Contractors, Inc. (Prusko) to clear out trees and brush from the site, and to begin rough grading the road beds.
A work site accident occurred on July 22, 1986. Michael Mayer, a laborer employed by Prusko, was involved in the site clearing work, when Aldwin Merz, a Prusko equipment operator, asked Mayer to refuel his bulldozer. A gas tank on the back of a pickup truck owned by Prusko was used for refueling. Because the bulldozer was some distance away and also at a higher elevation than the truck, Mayer moved the truck to a position directly below the bulldozer, and Merz began backing down the slope. The terrain was basically loose soil, since the grade of the road was incomplete.
When the bulldozer stopped, it was perpendicular to the truck and at a level about four feet higher than it. Merz shut the engine, engaged the safety, and then proceeded to open the fuel tank. At that moment, the machine began sliding down the slope toward Mayer and the pickup truck. Merz dove for the brakes and applied them, but his efforts had no effect. Mayer, *385 who had begun unlocking the truck's refueling tank, was pinned against the truck by the rolling bulldozer, and suffered injuries.
Mayer and his wife sued Greentree and others not involved in this appeal. Their complaint alleged that Mayer's injuries were caused because Greentree negligently "maintained, controlled, and supervised the [construction site] so as to cause the land to give way, crushing [Mayer]," and also because Greentree "failed to provide a safe place for [Mayer] to work, thereby causing [him] to be crushed, due to the land giving way." Mayer's wife sued per quod.
The Mayer suit was ultimately settled without prejudice to a declaratory judgment action for coverage and indemnification earlier brought by Greentree against Prusko's vehicle insurer, defendant United States Fidelity & Guaranty Co. (USF & G). On cross-motions for summary judgment, the Law Division judge granted USF & G's motion, holding that Greentree was not covered as an additional insured under the USF & G policy. Greentree appealed. We affirm.
The USF & G business auto policy affords liability coverage for
all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.
In describing "WHO IS AN INSURED," the policy states:
1. You [the named insured] are an insured for any covered auto.
2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except:
....
c. Anyone other than your employees, a lessee or borrower or any of their employees, while moving property to or from a covered auto.
....
There is no question that covered autos were involved. It is undisputed that Mayer was injured during a loading and unloading operation.
Loading and unloading activities constitute "use" of an automobile. Insurers are required to provide coverage to *386 additional insureds for accidents arising during loading and unloading, and any policy language that limits such coverage is invalid. Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., Inc., 119 N.J. 402, 406-08, 575 A.2d 416 (1990).[1] Certainly, Mayer was using the vehicles, and was therefore covered as an additional insured. However, that does not exclude Greentree as another insured user. USF & G's obligation to extend coverage to Greentree depends on whether the negligent act or omission on the part of Greentree which allegedly caused the accident was an integral part of the complete loading and unloading operation. See Lesniakowski v. Amerada Hess Corp., 225 N.J. Super. 416, 426-27, 542 A.2d 940 (App.Div. 1988); Cenno v. West Va. Paper & Pulp Co., 109 N.J. Super. 41, 45, 262 A.2d 223 (App.Div.), certif. denied, 56 N.J. 99, 265 A.2d 149 (1970).
Greentree's alleged failure to properly maintain, control, and supervise the construction site or to provide a safe workplace did not constitute any part of the loading and unloading process in which Michael Mayer and other Prusko employees were engaged. Greentree was not remotely involved with the refueling of the bulldozer, a routine activity carried out by Prusko and its employees.
We recognized the significance of this sort of non-involvement in loading and unloading operations in Lesniakowski v. Amerada Hess Corp., supra. In that case, a trailer owned by Narrows Carriers, Inc. (Narrows) was being loaded with gasoline by Lesniakowski, its driver, at Amerada's plant. After filling the first of two compartments, Lesniakowski unhooked the chain holding the premium gas spiller (located between the two compartments) so that he could pull the unleaded spiller to the second. However, the hook from the premium spiller caught the unleaded spiller, causing Lesniakowski to lose his *387 balance and fall off the top of the truck. He sued Amerada, alleging that it "failed to provide a safe place for [him] to work, in that the rig [spiller] was makeshift, dangerous and unsafe." 225 N.J. Super. at 420-21, 542 A.2d 940. Amerada sought a defense and indemnification from Narrows' insurer, Forum Insurance Co. (Forum). In reversing the entry of summary judgment in Amerada's favor, we said:
[N]o employee of Amerada was involved in the loading operation, and no negligence claim was asserted against any Amerada employee. Forum's policy cannot be converted into a comprehensive liability policy covering Amerada's premises merely by its assertion of an indemnification claim when it is sued for defective premises.
We do not consider that Amerada was using the vehicle involved, particularly when no agent or employee of Amerada was implicated in any way in the loading or unloading process. Amerada did nothing to effect the loading of the tank trailer except by providing the loading facility.
Id. at 427-28, 542 A.2d 940 (citations omitted). Amerada was not covered "because it had not assumed any control over the vehicle or the loading process." Id. at 428, 542 A.2d 940.
Similarly, Greentree did not assume any control or direction over Prusko's vehicles or the operation of unloading the gasoline from the pickup truck and funneling it into the bulldozer. It was therefore was not a user of those vehicles entitled to coverage as an additional insured.
We do not agree with Greentree's contention that because of its duties as a general contractor, its "connection to the vehicle is far different, far more extensive" than was Amerada's in Lesniakowski. It is true that as a general contractor, Greentree had broad responsibility to ensure jobsite safety. See Meder v. Resorts Int'l Hotel, Inc., 240 N.J. Super. 470, 473-77, 573 A.2d 922 (App.Div. 1989). However, a failure to meet that responsibility does not create the required nexus to the loading and unloading activity. Insurance coverage questions are not controlled by tort liability concepts. Thus, whether Greentree was guilty of a negligent omission does not bear on the question whether it was "using" the Prusko trucks. *388 Coverage exists only when there is a use of the vehicles. Although it is true that
the negligence of the general contractor must be a proximate cause of the accident in order to establish his liability in tort for the payment of damages, it does not necessarily follow, once his liability in damages has been established, that proximate cause is an essential element to establish coverage under an [omnibus provision of an] insurance policy.... The determination of the scope of coverage and the nature of the peril insured against is dependent upon a proper interpretation of the contract to discover the intent of the contracting parties, and that interpretation is not controlled by tort concepts of liability.
Ed Kraemer & Sons, Inc. v. Transit Casualty Co., 402 N.W.2d 216, 219 (Minn. Ct. App. 1987) (quoting Woodrich Constr. Co. v. Indemnity Ins. Co. of N. Am., 252 Minn. 86, 89 N.W.2d 412, 418 n. 3 (1958) (emphasis in original)); see Wakefern Food Corp. v. General Accident Group, 188 N.J. Super. 77, 83, 455 A.2d 1160 (App.Div. 1983). A common theme in decisions from other jurisdictions that have considered whether a hired contractor's vehicles are being "used" by the hirer is that unless active or actual control is asserted over the guidance or operation of the vehicles, the general contractor or hiring party will not be an additional insured. See Great Am. Ins. Co. v. General Accident Fire & Life Assurance Corp., 321 F.2d 948 (5th Cir.1963); County of Wyoming v. Erie Lackawanna Ry. Co., 360 F. Supp. 1212 (W.D.N.Y. 1973), aff'd, 518 F.2d 23 (2d Cir.1975); Hake v. Eagle Picher Co., 265 F. Supp. 331 (W.D.Wisc. 1966), aff'd, 406 F.2d 893 (7th Cir.1969); Continental Ins. Co. v. United States Fidelity & Guar. Co., 528 P.2d 430 (Alaska 1974); International Business Machs. Corp. v. Truck Ins. Exch., 2 Cal.3d 1026, 474 P.2d 431, 89 Cal. Rptr. 615 (1970); Camay Drilling Co. v. Travelers Indem. Co., 12 Cal. App.3d 237, 90 Cal. Rptr. 710 (1970); Wellman-Lord Eng'rs, Inc. v. Northwestern Mut. Ins. Co., 222 So.2d 436 (Fla. Dist. Ct. App. 1969); Protective Ins. Co. v. Coca-Cola Bottling Co., 467 N.E.2d 786 (Ind. Ct. App. 1984); United States Fidelity & Guar. Co. v. Backus, 243 Md. 121, 220 A.2d 139 (1966); Woodrich, supra, 252 Minn. 86, 89 N.W.2d 412; Insurance Co. of N. Am. v. Royal Globe Ins. Co., 30 Wash. App. 78, 631 P.2d 1021 (1981). No one contends that Greentree actually directed, guided, controlled, *389 or otherwise involved itself in the brief refueling procedure attempted by Prusko's employees.
Greentree's related argument, based on a generous reading of the Mayers' complaint, that the allegation of negligence was really that Greentree failed to supervise the loading and unloading process itself, is likewise flawed. Assuming that the complaint makes such a claim, Greentree's negligent omission would not amount to involvement in the refueling operation. In fact, the allegation is that Greentree was not involved at all. If Greentree was liable because it failed to direct the refueling operation, then it was liable because it negligently kept itself unconnected to the operation. The absence of such a connection precludes a finding that Greentree used the Prusko vehicles.
We have recognized in the past that sound policy counsels against overstretching the reach of loading and unloading coverage. See Wakefern, supra, 188 N.J. Super. at 86-87, 455 A.2d 1160. The same practical reasons why such coverage should not include negligent maintenance of the premises where the loading or unloading was carried out apply with equal force to the negligence claims asserted against Greentree here. Judge Debevoise summed those reasons up well in Halifko v. Cities Serv. Oil Co., 510 F. Supp. 1131, 1136-37 (D.N.J. 1981), aff'd o.b. mem., 676 F.2d 685 (3d Cir.1982):
Sound policy considerations weigh strongly against construing an omnibus clause to cover the owner of a loading platform on which a named insured is injured solely due to an unsafe condition on the premises. Such an interpretation would reallocate the ultimate financial risk of the platform owner's negligence to the truck driver's insurance company. This reallocation, in turn, would inevitably result in increased premiums to the motor vehicle operator. As a consequence, the owner of a plant or warehouse at which trucks are unloaded would be freed from a financial incentive to maintain his premises in a safe condition. Truck owners and operators, who exercise little or no control over the premises on which they unload, would be forced to bear the entire financial burden of accidents resulting from platform owners' lack of care.
The position of the general contractor that negligently supervised a jobsite is similar to that of the platform owner that negligently maintained the platform. Had the platform been *390 properly inspected, perhaps an accident would have been avoided; had the jobsite activities been adequately supervised, perhaps a subcontractor's employee would not have been injured. In both cases, the failings do not connect the platform owner or the general contractor to the loading and unloading operation.
Affirmed.
NOTES
[1] Because of our holding that Greentree was not using Prusko's vehicles, we need not decide whether the policy exclusion is impermissible.