785 A.2d 50 (2001)
345 N.J. Super. 336
William PISANESCHI, Plaintiff,
v.
TURNER CONSTRUCTION COMPANY, New Jersey Institute of Technology, Defendants,
and
Liebert Corporation, Defendant/Third-Party Plaintiff-Respondent,
v.
Pennsylvania National Mutual Casualty Company, Third-Party Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 2001.
Decided November 21, 2001.
*51 *52 Robert M. Kaplan, Westmont, argued the cause for appellant, (Margolis Edelstein, attorneys; Jacqueline A. Mokoid and Peter S. Cuddihy, on the brief).
Joseph Di Rienzo, Jr., Fanwood, argued the cause for respondent, (Di Rienzo and Di Rienzo, attorneys; Joseph Di Rienzo, Jr., on the brief).
Before Judges SKILLMAN, CARCHMAN and WELLS.
The opinion of the court was delivered by CARCHMAN, J.A.D.
This appeal again presents an issue as to the scope of the loading and unloading doctrine and the allocation of responsibility for damages for personal injury arising from the use of a product or goods as between the liability coverage of a product manufacturer and the automobile coverage of the trucking company involved in the unloading of the product. Relying on the Supreme Court's decision in Kennedy v. Jefferson Smurfit Co., 147 N.J. 394, 688 A.2d 89 (1997), the motion judge concluded that despite the fact that the goods had been unloaded from a truck to a loading dock, the unloading process had not been completed, and the trucking company was obligated to provide a defense and indemnification for injuries resulting from an accident occurring while the product was being moved from a loading dock to a storage area. We disagree and conclude that under the facts presented here, the unloading process had been completed, and the responsibility for coverage remained with the product manufacturer.
The relevant facts adduced during crossmotions for summary judgment were not in significant dispute. Plaintiff William Pisaneschi was employed by Air Systems, Inc. (Air Systems), which had subcontracted with the general contractor, defendant Turner Construction Co., to supply, deliver and install air conditioning equipment for a renovation project on the premises of defendant New Jersey Institute of Technology (NJIT). The equipment for the NJIT job was manufactured by defendant Liebert Corporation (Liebert) and purchased by Air Systems from a local distributor. Liebert packaged each of the six 300pound *53 air conditioning units for shipment from its Ohio facility by placing them into individual corrugated cardboard boxes and strapping each box to a separate wooden pallet with two one-half-inch wide black plastic straps. Air Systems ultimately received the units in its Kenilworth shipping yard, where the units were loaded onto an Air Systems rack truck and transported to the NJIT job site. There, plaintiff and his fellow employees off-loaded the units onto the loading dock.
After an Air Systems' employee moved the truck away from the dock, plaintiff began pushing and pulling one of the packages to a storage area, so as to align its pallet for pick-up by a pallet jack or forklift. As plaintiff was attempting to move or rotate the package, one of the plastic straps broke, and plaintiff fell and was injured.
Air Systems maintains an automobile liability policy with third-party defendant Pennsylvania National Mutual Casualty Company (Penn). The policy includes an omnibus loading/unloading provision providing liability coverage to additional users of the insured vehicle.
Following the accident, plaintiff filed an action in the Law Division seeking damages based on strict liability and breach of express and implied warranties. After filing an answer to plaintiff's complaint, Liebert filed a third-party complaint against Penn seeking a declaratory judgment requiring Penn to defend and indemnify Liebert against plaintiff's claims as an additional insured under the loading/unloading provision of Air Systems' motor vehicle insurance policy.
The parties cross-moved for summary judgment. Penn claimed that Liebert was not an additional insured under the policy because: (1) the truck was completely unloaded by the time this incident occurred, and the air handling units were at their final destination; (2) plaintiff's complaint sounded in product liability, rather than alleging negligence on the part of any Liebert employee in loading or unloading the Air Systems truck; and (3) Liebert was not "using" Air Systems' truck at the time of the accident, and, therefore, could not be considered an additional insured under Air Systems' Penn policy. Liebert contended that it was entitled to summary judgment because: (1) the unit had not yet been moved from the loading dock to its delivery destination within the building when the accident occurred; (2) under Kennedy, Liebert's claim would be covered by Penn's policy whether plaintiff's defective packaging claim sounded in negligence or product liability; and (3) Liebert "used" the Air Systems' vehicle because it had packaged its goods for shipping.
The motion judge denied Penn's motion, granted Liebert's and determined that Liebert was entitled to coverage under the Penn policy. He concluded that the unloading process was not yet complete when the accident occurred and stated:
At the time of the accident it's undisputed that all six units had been taken off the truck onto the landing dock, and furthermore that four of those units had been taken by the Air Systems employees to other parts of the building.... It is undisputed ... that the Air Systems truck was pulled away some short distance from the loading dock. Thereafter... plaintiff ... was moving an air handling unit when the ... bailing strap broke and caused him to fall, sustaining injuries. The air handling unit ... was manufactured by Liebert, which also packaged the unit in a box and placed the strap around the box.
....
Now having said that, the first question is ... was the plaintiff injured while he was unloading the truck. I frankly, *54 after examining the records submitted to me, which include the complaint, the deposition transcripts, various certifications, I don't see any ... disputes here of any material fact.
....
I find that [the Air Systems' employees'] sole purpose was to deliver these units; not to install them ...; that ... the whole delivery process, the whole unloading process and delivery process is really the same thing; and that in removing ... the units from the loading dock, they were still in the process of unloading. That is, the unloading process was a continuing process, that they were not delivering the air handling units to the loading dock[ ]; they were delivering the air handling units to some location in the building. And that the loading dock ... therefore is really nothing more than a staging area or a phase in the unloading process.
....
So therefore I find that the plaintiff was injured during the unloading process.
As to whether Liebert's packaging was in preparation of shipping, and therefore part of the loading process constituting a covered "use" of Air Systems' delivery truck, the judge found that Liebert had strapped the packages solely in preparation for loading, shipping and unloading the units. The judge went on to discuss the significance of Kennedy and our earlier decision in Cenno v. West Virginia Paper & Pulp Co., 109 N.J.Super. 41, 262 A.2d 223 (App.Div.), certif. denied, 56 N.J. 99, 265 A.2d 149 (1970). The judge noted:
Now the question turns to [Kennedy] and to [C]enno. And here the argument is ... he may have been injured while unloading, but the alleged negligence took place prior to the act of unloading. That is [C]enno, and that requires a finding that there is no coverage.
....
So now what we're looking at is what appears ... to be a rather tenuous distinction, but a distinction made by the majority of the [C]ourt in Kennedy. And I refer now specifically to page 401[, 688 A.2d 89] ... where the [C]ourt says, "The critical issue is whether Jefferson's selection of the defective pallet was an integral part of the loading activity and thus covered under the use provision. The injury occurred during unloading."... "But the negligent act occurred before the physical loading of the goods. Therefore, the question becomes whether selecting the pallet"or in this case the bailing"was an act in preparation of loading the vehicle or an unrelated act."
The [C]ourt goes on to say that [C]enno is distinguishable because ... "it is unclear whether the cardboard [in Cenno]... was bailed with metal bands solely to facilitate its shipment, or whether that was a requirement of West Virginia's customer" .... "If there had been a factual basis for concluding that the bailing was done solely to enable shipment of the goods, the [C]enno court would have found West Virginia to be an additional insured."
....
For the record, ... based on the documents submitted to me, which include the transcripts of deposition testimony, the two exhibits that were produced thereto being blueprints [of the packaging], the testimony in the depositions that this is how all those air handling units were packaged, that there is nothing in the record to suggest that the bailing was done for any other purpose than for the ... loading, shipping, and unloading of the air handling units.

*55 There's ... no suggestion of any evidence that these bailing strips were requested specifically by Liebert. The testimony clearly is that everybody got the bailing straps.
....
It seems to me that this case is controlled by Kennedy ... that the injury occurred during the unloading process; that the act of selecting the bailing or bailing the air handling unit by Liebert was an act in preparation of loading the vehicle and had no other purpose; and therefore summary judgment is granted to ... Liebert and the motion ... of [Penn] is denied.
In the underlying liability action, plaintiff abandoned both claims for defective manufacture of the strapping and negligence in the selection or use of such strapping, and proceeded to trial on a theory of Liebert's "failure to warn" consumers of the proper use of the strapping. The jury found against plaintiff and in favor of Liebert.[1] On Penn's application for reconsideration of the coverage issue following the jury verdict, the motion judge denied relief.
The judge properly focused on Kennedy and Cenno to reach his determination as to coverage. We disagree, however, as to his interpretation of the import of Kennedy and its application to the facts of this case.
New Jersey's compulsory motor vehicle insurance law requires insurers of registered vehicles in this state to provide coverage for losses "resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a motor vehicle...." N.J.S.A. 39:6B-1; see also N.J.S.A. 39:6A-3; Kennedy, supra, 147 N.J. at 403, 688 A.2d 89. Implicit within that requirement is the obligation to provide omnibus liability coverage to all persons who "use" the named insured's vehicle by participating in its loading or unloading. Kennedy, supra, 147 N.J. at 398-99, 688 A.2d 89; Craggan v. IKEA USA, 332 N.J.Super. 53, 64-65, 752 A.2d 819 (App.Div.2000); Bellafronte v. General Motors Corp., 151 N.J.Super. 377, 381-83, 376 A.2d 1294 (App.Div.), certif. denied, 75 N.J. 533, 384 A.2d 513 (1977). This mandatory "use" coverage "must be broadly construed in order to effectuate the overriding legislative policy of assuring financial protection for the innocent victims of motor vehicle accidents." Kennedy, supra, 147 N.J. at 403-04, 688 A.2d 89 (quoting Bellafronte, supra, 151 N.J.Super. at 382, 376 A.2d 1294). However, it is not intended to insure all defendants against all claims arising from any accident in any way incident to loading/unloading irrespective of causation, that is, irrespective of the defendant's actual involvement with the insured vehicle itself. See, e.g., Halifko v. Cities Serv. Oil Co., 510 F.Supp. 1131, 1133 (D.N.J.1981), aff'd o.b. mem., 676 F.2d 684, 685 (3d Cir.1982); Craggan, supra, 332 N.J.Super. at 67-69, 752 A.2d 819; Greentree Assocs. v. United States Fid. & Guar. Co., 256 N.J.Super. 382, 388, 607 A.2d 175 (App.Div.1992); Cenno, supra, 109 N.J.Super. at 45, 262 A.2d 223; Atlantic Mut. Ins. Co. v. Richards, 105 N.J.Super. 48, 49, 251 A.2d 134 (App. Div.1969); 8 Couch on Insurance § 121:7 (3d ed.1997). Rather, it is only "intended to protect the named insured and others who, in the pick-up or delivery process, are actually using the motor vehicle *56 and its contents during the `complete operation'" of that vehicle. Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., Inc., 119 N.J. 402, 409, 575 A.2d 416 (1990) (quoting Wakefern Food Corp. v. General Accident Group, 188 N.J.Super. 77, 86, 455 A.2d 1160 (App. Div.1983)).
In assessing whether a defendant's coverage claim is embraced by the named insured's vehicle omnibus provision, "the pertinent inquiry is whether the acts of negligence charged to defendants were part of the overall loading or unloading operation so that, in the commission of the negligent acts charged, defendants can be said to have been using the vehicle and thereby became additional insureds under the policy." Kennedy, supra, 147 N.J. at 400, 688 A.2d 89 (quoting Cenno, supra, 109 N.J.Super. at 45, 262 A.2d 223); Smithbower v. Navistar Int'l Transp. Corp., 265 N.J.Super. 119, 124, 625 A.2d 586 (App.Div.1993) (same). A defendant is not entitled to coverage as an additional insured unless: (1) defendant's alleged act or omission constituted an integral part of the loading or unloading of the insured's vehicle, Kennedy, supra, 147 N.J. at 400-01, 688 A.2d 89; Cenno, supra, 109 N.J.Super. at 45, 262 A.2d 223; and (2) plaintiff's injury occurred during the process of loading or unloading that vehicle, and was causally connected with defendant's alleged act, Kennedy, supra, 147 N.J. at 399, 688 A.2d 89; Maryland Cas. Co. v. New Jersey Mfrs. Cas. Ins. Co., 48 N.J.Super. 314, 320, 137 A.2d 577 (App. Div.), aff'd, 28 N.J. 17, 145 A.2d 15 (1958).
Under New Jersey's "complete operation" doctrine, "loading and unloading" insurance "covers the entire process involved in the movement of goods, from the moment they are given into the [named] insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made...." Cenno, supra, 109 N.J.Super. at 46, 262 A.2d 223; see also Couch, supra, § 121:10. Any accident occurring during and arising out of the process of loading or unloading the insured vehicle is covered, and "[f]or all practical purposes, any distinction between `unloading' and `delivery' and between `loading' and `preparatory actions' is not considered." Cenno, supra, 109 N.J.Super. at 46-47, 262 A.2d 223; see also Couch, supra, § 121:10. "Loading" an insured vehicle "embraces steps immediately preparatory to the actual physical placing of the goods or cargo on the vehicle." Couch, supra, § 121:11 (emphasis added). Thus, "the distinction between preparations for loading and the act of loading is obliterated." Kennedy, supra, 147 N.J. at 400, 688 A.2d 89 (citing Drew Chem. Corp. v. American Fore Loyalty Group, 90 N.J.Super. 582, 587, 218 A.2d 875 (App.Div.1966)).
In Kennedy, a divided Supreme Court determined that a manufacturer's negligent selection and use of defective packaging materials to facilitate the loading of its product onto the vehicle transporting its goods from the factory constitutes the commencement of loading that vehicle, and is therefore a covered act for purposes of omnibus loading/unloading liability coverage under that vehicle's policy. 147 N.J. at 401, 688 A.2d 89. In so finding, the Court distinguished our earlier decisions where defendants' alleged negligence resulted from negligent upkeep or defective premises, rather than active participation in the loading or unloading processes of the vehicles themselves. Id. at 401-03, 688 A.2d 89.
The premises-liability cases deny coverage under the automobile policy for accidents occurring during loading and unloading activities because the accident arose not from the loading or unloading *57 activities, but from the negligent acts of the owner of the premises where the accident occurred, prior to the loading or unloading of the vehicle.

[Id. at 401-02, 688 A.2d 89.]
The Court cited Forsythe v. Teledyne Turner Tube, 209 N.J.Super. 608, 617, 508 A.2d 1156 (App.Div.1986) (finding no automobile coverage where docking plate used to facilitate loading of a truck broke causing party to fall); Neuman v. Wakefern Foods, 205 N.J.Super. 263, 266, 500 A.2d 752 (App.Div.1985) (finding no automobile coverage where party was struck by hand truck used for unloading); Wakefern Food Corp., supra, 188 N.J.Super. at 84, 455 A.2d 1160 (finding no automobile coverage where party fell on debris including a broken pallet and other material used in unloading process); Atlantic Mutual Insurance Co. v. Richards, 100 N.J.Super. 180, 185, 241 A.2d 468 (Ch.Div. 1968), aff'd, 105 N.J.Super. 48, 251 A.2d 134 (App.Div.1969) (finding no automobile coverage where party tripped over a slat of dunnage and fell into an open stairwell while engaged in the unloading process), and found our reasoning in those cases consistent with the Court's finding coverage for a defendant-manufacturer's selection and use of the defective pallet in preparing to load the trucker's vehicle, because it was a necessary preliminary to the process of loading that vehicle. Kennedy, supra, 147 N.J. at 403, 688 A.2d 89.
Following its distinction between the loading and unloading cases and those cases involving the "negligent acts of the owner of the premises where the accident occurred, prior to the loading or unloading of the vehicle," id. at 402, 688 A.2d 89, the Court addressed this apparent inconsistency with Cenno and said:
Finally, we do not agree that our holding is inconsistent with Cenno. Indeed, based on the standard for inquiry set forth by the Cenno court, the selection of the pallet was an integral part of the loading process. In Cenno, the plaintiff, a truck driver, was injured while delivering a load of baled cardboard manufactured by the West Virginia Paper and Pulp Company (West Virginia). "The cardboard had been baled by West Virginia at its Hoboken plant using metal bands and clips manufactured by defendant Acme Steel Company." After arriving at the Allied Paper plant in Brooklyn, the plaintiff attempted to move one of the bales to the rear of the truck by pulling on the metal band securing the bale. The band broke, causing the plaintiff to lose his balance and fall out of the truck. The Appellate Division found that West Virginia was not an additional insured under the comprehensive automobile-liability policy, on the grounds that the negligent banding of the bales did not "constitute a part of the loading or unloading process." It is unclear whether the cardboard was baled with metal bands solely to facilitate its shipment or whether that was a requirement of West Virginia's customer. If there had been a factual basis for concluding that the baling was done solely to enable shipment of the goods, the Cenno court would have found West Virginia to be an additional insured.

[Id. at 404-05, 688 A.2d 89 (citations omitted) (emphasis added).]
In Cenno, banding similar to that used by Liebert snapped as plaintiff was removing the goods from the truck. 109 N.J.Super. at 44, 262 A.2d 223.
Liebert focuses on the last two sentences quoted above and contends that this case is "factually indistinguishable from Kennedy." It argues that the premises defect cases excluding coverage are inapposite because "Liebert's selection of shipping strapping is undisputedly [sic] a preparation *58 for loading that is a use of the motor vehicle," and the "premises liability cases deal with allegations that have no involvement with a motor vehicle."
We distinguish Kennedy and the application of the Court's dicta regarding the banding to "facilitate shipment." Unlike the factual scenario described in Cenno, where the banding snapped as the goods were in the truck and being moved, here the goods had been completely removed from the truck, and the truck had been moved from the loading dock. The movement of the goods within NJIT's premises was simply a matter of convenience to place them in another location pending installation. According to plaintiff's deposition, the air handlers were being moved from the dock to a storage facility to be installed at a later time. Considering the temporal nature of the movement of the goods, they could have been moved the next day or next week. The motion judge's observation that this was a "staging area" for future movement of the goods is not dispositive in defining whether the described conduct fell within the scope of the "complete operation" doctrine. See Cenno, supra, 109 N.J.Super. at 46, 262 A.2d 223.
Here, the delivery had been accomplished. The goods had arrived at NJIT and were being internally manipulated for storage as a matter of convenience. Liebert suggested at oral argument that even if the goods were being moved from room to room, liability would attach to the automobile carrier. We do not interpret the "complete operation" doctrine or the Court's decision in Kennedy as mandating coverage beyond that contemplated by the parties or envisioned by the practical application of the doctrine. In Drew Chemical Corp. v. American Fore Loyalty Group, 90 N.J.Super. 582, 587, 218 A.2d 875 (App.Div.1966), we noted that the endpoint of the completed operations is when the goods are "turned over at the place of destination to the party to whom delivery is to be made." Id. at 586-87, 218 A.2d 875. We also observed that the application of the "complete operation" doctrine is fact sensitive. Id. at 587, 218 A.2d 875. That sharp line is blurred under the facts here. Here, Air Systems was both the delivery agent and installer. They were in essence delivering the goods to their control to be installed at NJIT.
We do not read Kennedy`s dicta regarding Cenno as mandating coverage except when the bands used for packaging are involved in the loading and unloading process. As we have noted, in Cenno, the bands snapped while the goods were on the truck and being unloaded. Here, the accident occurred after the goods had been removed from the truck that had left the area. Under these circumstances, we perceive of no policy considerations mandating that responsibility should be borne by the truck's insurer rather than the manufacturer who packaged the items in question, or its insurer. Even though the bands were part of the packaging process, the accident in question post-dated the loading and unloading process.
We conclude that the motion judge erred in denying Penn's motion for summary judgment and granting Liebert's motion.
Reversed.
NOTES
[1] Plaintiff appealed, and we affirmed in an unreported opinion filed contemporaneously with this opinion.